******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANDREW CIMMINO *v.* MARIA MARCOCCIA
(AC 34961)

Beach, Sheldon and Foti, Js.

*Submitted on briefs November 21, 2013—officially released April 8, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J.)

*George Jepsen*, attorney general, and *Philip Miller*,
assistant attorney general, filed a brief for the appellants
(defendant Christina Ghio et al.).

*Josephine Smalls Miller* filed a brief for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendants Christina Ghio and Robert Teitelman appeal from the judgment of the trial court denying their motion to dismiss counts seven through ten of the eighth amended complaint filed by the plaintiff, Andrew Cimmino, for want of subject matter jurisdiction.[1] On appeal, the defendants claim that the court improperly concluded that the claims presented in counts seven, eight, nine, and ten of that complaint (1) were not barred by the doctrine of sovereign immunity, and (2) were not subject to statutory immunity pursuant to General Statutes § 4-165. We agree that the claims against the defendants are barred by the doctrine of sovereign immunity and, accordingly, reverse the judgment of the trial court.[2]

The record reveals the following procedural history. On March 16, 2009, the plaintiff, the former principal of Thomas Hooker Elementary School in Bridgeport (school), commenced this action against the named defendant, Maria Marcoccia, alleging vexatious suit and intentional infliction of emotional distress. On February 26, 2010, the court granted the plaintiff's motion for permission to file his fifth amended complaint and to cite in Sally Lyddy and Ellen Tiedman, a former employee and current employee of Bridgeport Public Schools, respectively, and the Bridgeport Board of Education (board) as additional defendants. On January 23, 2012, the court granted the plaintiff's motion for permission to file his eighth amended complaint and to cite in additional defendants, and the plaintiff cited in the defendants in the present appeal, Ghio and Teitelman, in their "individual capacities only."[3]

At all times relevant to the allegations in the plaintiff's complaint, Ghio was employed as an attorney by the Office of the Child Advocate and Teitelman was employed as an assistant attorney general. In his complaint, with respect to both Ghio, in counts seven and eight, and Teitelman, in counts nine and ten, the plaintiff alleged tortious interference with contract and intentional infliction of emotional distress. On the basis of the allegations against the defendants, the plaintiff sought compensatory and punitive damages, as well as "such relief as may be deemed appropriate" by the court.

On March 29, 2012, the defendants moved to dismiss counts seven, eight, nine, and ten of the plaintiff's complaint for lack of subject matter jurisdiction, contending that the claims therein were barred by the doctrine of sovereign immunity or, alternatively, by the defense of statutory immunity pursuant to § 4-165. The court denied the defendants' motion with respect to the defendants' claims of sovereign immunity. The court ruled that the doctrine did not apply because: (1) the defendants had been sued in their individual capacities only,

(2) the complaint contained allegations that the defendants exceeded their statutory authority, and (3) the complaint did not seek money damages from the state. With respect to the claims of statutory immunity pursuant to § 4-165, the court ruled that statute did not apply because it only immunizes state employees from liability for negligence, not "the type of wilful and intentional conduct alleged against both defendants" in the complaint. This appeal followed.[4]

"As we must in reviewing a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 305, 828 A.2d 549 (2003). In his complaint, the plaintiff alleged the following facts: Between 2001 and 2012, the plaintiff served as principal of the school. In October, 2004, the plaintiff was the subject of an investigation by the Bridgeport Police Department regarding an alleged incident of child abuse that had occurred in the spring of 2002. The Department of Children and Families (department) conducted an investigation into the same allegations in December, 2005. Both investigations terminated in favor of the plaintiff.

In April, 2008, a department employee contacted the plaintiff to inform him that he was again under investigation in connection with the 2002 allegations. During the course of the April, 2008 investigation, four photographs relating to the allegations were presented to the plaintiff. The photographs, which were the impetus for the department's renewal of its investigation, were taken by Marcoccia, an employee at the school. Marcoccia delivered the photographs to the department in retaliation for the plaintiff's attempts to reveal her fraudulent misappropriation of school funds. The April, 2008 investigation terminated in favor of the plaintiff.

Thereafter, in July, 2009, Marcoccia, Lyddy, and Tiedman met with John DiDonato, the assistant superintendent of Bridgeport public schools, to present renewed allegations against the plaintiff in connection with the 2002 incident.[5] During this meeting, they supplied DiDonato with the photographs that Marcoccia previously had delivered to the department in April, 2008. Also in July, 2009, Ghio, on behalf of the Office of the Child Advocate, and Teitelman, on behalf of the Office of the Attorney General, as part of a broader inquiry into school district responses to child abuse, initiated an investigation into the board's response to the allegations of child abuse made against the plaintiff in connection with the 2002 allegations. In the course of their investigation, the defendants summoned John Ramos, the superintendent of Bridgeport public schools, to Hartford, where they questioned him and showed him photographs, which were the same photographs taken

by Marcoccia of the child abuse allegedly perpetrated by the plaintiff in 2002. After showing the photographs to Ramos, the defendants asked him "what he intended to do about what was depicted in the photographs." As a result of the defendants' pressuring Ramos to take action against the plaintiff, the board initiated a renewed report with the department concerning the 2002 allegations against the plaintiff, placed him on administrative leave effective September 11, 2009, and conducted an internal investigation into the allegations. During the internal investigation, the attorney for the board wrote to the Department of Education regarding the plaintiff's pending application for recertification. The attorney enclosed copies of the renewed report made by the board in his correspondence. The plaintiff later learned that approval of his pending recertification was deferred as a result of the internal investigation. In addition, his employment contract was terminated effective June 16, 2010.

The defendants claim that the trial court improperly denied their motion to dismiss the claims asserted against them on the basis of sovereign immunity. Specifically, the defendants contend that, although the plaintiff's complaint purports to sue them in their individual capacities only, the state nevertheless is the real party in interest pursuant to the four-prong test first articulated in *Somers* v. *Hill*, 143 Conn. 476, 123 A.2d 468 (1956), and later expounded upon in *Spring* v. *Constantino*, 168 Conn. 563, 362 A.2d 871 (1975). To the extent that the state is the real party in interest, the defendants further contend that the plaintiff's claims against them are barred by the doctrine of sovereign immunity. We agree with the defendants.

We begin by setting forth the applicable standard of review and relevant principles of law. "The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . In addition, [s]overeign immunity relates to a court's subject matter jurisdiction over a case, and therefore [also] presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common-law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer repre-

sents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Chief Information Officer* v. *Computers Plus Center, Inc.*, 310 Conn. 60, 79–80, 74 A.3d 1242 (2013).

In the present case, although the plaintiff purports to sue the defendants in their individual capacities and the state is not named as a defendant, we do not determine "[w]hether a particular action is one against the state . . . solely by referring to the parties of record." (Internal quotation marks omitted.) *Kenney* v. *Weaving*, 123 Conn. App. 211, 215–16, 1 A.3d 1083 (2010). "[T]he fact that the state is not named as a defendant does not conclusively establish that the action is not within the principle which prohibits actions against the sovereign without its consent. . . . The vital test is to be found in the essential nature and effect of the proceeding." (Internal quotation marks omitted.) *Spring* v. *Constantino*, supra, 168 Conn. 568. "To determine whether an action is against the state or against a defendant in his individual capacity, we look to the four criteria established by our Supreme Court in [*Somers* v. *Hill*, supra, 143 Conn. 479–80] and . . . explained . . . in [*Spring* v. *Constantino*, supra, 568]. If all four criteria are satisfied, the action is deemed to be against the state and, therefore, is barred." *Kenney* v. *Weaving*, supra, 216. Accordingly, we must determine whether "(1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." *Spring* v. *Constantino*, supra, 568.

Beginning with the first criterion, it is undisputed that the defendants are both state officials, satisfying the first criterion.[6] With respect to the second criterion, the action against the defendants stems from their interview with Ramos. The defendants interviewed Ramos in connection with a joint investigation initiated by the Office of the Child Advocate and the Office of the Attorney General. Although it appears that any claim arising from the defendants' interview with Ramos would plainly concern a matter in which they were acting on behalf of the state, the plaintiff argues that when the defendants asked Ramos what he intended to do about the depictions in the photographs, they implicitly urged him to take action against the plaintiff. In doing so, the plaintiff argues that the defendants acted beyond the scope of their official functions and, consequently, the suit is not directed at a matter in which the defendants were acting on behalf of the state. The plaintiff's argument fails, however, as the statutorily authorized[7] joint investigation "included an in-depth examination of five school districts in Connecticut," including Bridgeport,

and sought to explore both "the manner in which allegations that school employees have abused and/or neglected children are addressed," and "the responses of local school districts, [the department], and the State Department of Education." When the defendants asked Ramos what he intended to do about the depictions in the photographs, they were acting in furtherance of a joint investigation authorized by statute and initiated by the state agencies that employed them. Accordingly, because the action against the defendants concerns a matter in which they represented the state, the second criterion is satisfied.

Turning to the third criterion, the plaintiff argues that he unequivocally sued the defendants in their individual capacities only and that these allegations establish "that the state is not the real party against whom relief is sought." The plaintiff seeks damages allegedly caused by the conduct of the defendants in the discharge of their official duties, namely, conducting a joint investigation into "the manner in which allegations that school employees have abused and/or neglected children are addressed." That the plaintiff purports to sue the defendants only in their individual capacities is not, in itself, determinative of whether the state is the real party in interest. See *Sullins* v. *Rodriguez*, 281 Conn. 128, 136, 913 A.2d 415 (2007) ("test set forth in *Spring* and *Miller* is an appropriate mechanism . . . to determine the capacity in which the named defendants are sued in actions asserting violations of state law"); *Kenney* v. *Weaving*, supra, 123 Conn. App. 215–16 (we do not determine whether action is against state solely by referring to parties of record). The damages sought by the plaintiff are premised entirely on injuries alleged to have been caused by the defendants in performing acts that were part of their official duties. We conclude that the state is the real party in interest and, accordingly, the third criterion is satisfied. See *Somers* v. *Hill*, supra, 143 Conn. 480 (state real party in interest where damages sought for injuries allegedly caused by commissioner in carrying out acts for which state employed him); *Macellaio* v. *Newington Police Dept.*, 142 Conn. App. 177, 181, 64 A.3d 348 (2013) ("third criterion [of *Spring* test] . . . met because damages are sought for injuries allegedly caused by the defendant for performing acts that are a part of his official duties such that the state is the real party against whom relief is sought"); *Kenney* v. *Weaving*, supra, 216–17 (same).

Finally, the fourth criterion, that the judgment, though nominally against state officials, will operate to control the activities of the state, is also satisfied. Any judgment against the defendants would impact the manner in which state officials conduct investigations.[8] *Hultman* v. *Blumenthal*, 67 Conn. App. 613, 621, 787 A.2d 666, cert. denied, 259 Conn. 929, 793 A.2d 253 (2002).

In sum, because the criteria in *Spring* are satisfied, we conclude that the plaintiff's complaint alleged claims against the defendants in their official capacities. The action against the defendants is, in effect, against the state. This conclusion does not end our inquiry, however, as "[t]he sovereign immunity enjoyed by the state is not absolute." (Internal quotation marks omitted.) *Macellaio* v. *Newington Police Dept.*, supra, 142 Conn. App. 183 n.6. There are three exceptions to the doctrine of sovereign immunity: "(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Internal quotation marks omitted.) Id. In the present case, the plaintiff seeks money damages for harm caused by the defendants in the discharge of their official duties. The plaintiff has not directed us to any statute indicating that the legislature has waived sovereign immunity for this action. Moreover, the plaintiff does not seek declaratory or injunctive relief. The action does not fall within any recognized exception to the doctrine of sovereign immunity and is, therefore, barred. Accordingly, the trial court improperly denied the defendants' motion to dismiss for want of subject matter jurisdiction.

The judgment denying the defendants' motion to dismiss is reversed and the case is remanded with direction to grant the motion, and to render judgment dismissing counts seven, eight, nine, and ten of the complaint.

In this opinion the other judges concurred.

[1] Although there are additional defendants before the trial court, the motion to dismiss brought by Ghio and Teitelman is the subject of the present appeal. In this opinion, we refer to Ghio and Teitelman collectively as the defendants, and to them individually by name where appropriate.

[2] In light of this conclusion, we need not address whether the defendants were entitled to the defense of statutory immunity pursuant to General Statutes § 4-165. "[I]f sovereign immunity does not apply to the claim against [a state official] in her official capacity, the statutory immunity may then apply to the claim against her in her individual capacity. Thus, before determining whether and to what extent the defendants are shielded by the statutory immunity provided by § 4-165, it is appropriate to determine whether the claims against them are barred by the common-law doctrine of sovereign immunity." *Shay* v. *Rossi*, 253 Conn. 134, 162–63, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

[3] The eighth amended complaint is the operative complaint. For purposes of clarity, we refer in this opinion to the operative complaint as the complaint.

[4] "The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal. . . . The denial of a motion to dismiss based on a colorable claim of sovereign immunity, by contrast, is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 303 n.2, 828 A.2d 549 (2003). There is no dispute that the defendants' claim of sovereign immunity is colorable.

Accordingly, we consider the merits of the defendants' claim that the court improperly denied their motion to dismiss.

[5] In his complaint, the plaintiff alleged that neither Marcoccia nor Lyddy were employed by Bridgeport Public Schools in July, 2009. Tiedman, however, was employed by Bridgeport Public Schools when the group approached DiDonato in July, 2009.

[6] In his brief before this court, the plaintiff concedes that the defendants are state officials. In addition, the complaint alleges that the defendants, "at all times relevant herein," have been attorneys and agents for "the Office of the Child Advocate" and "the Connecticut Office of the Attorney General," respectively.

[7] The joint investigation was initiated pursuant to General Statutes §§ 3-125 (a) and 46a-13*l* (a). Section 46a-13*l* (a) provides in relevant part: "The Child Advocate shall . . . (1) Evaluate the delivery of services to children by state agencies and those entities that provide services to children through funds provided by the state . . . (3) Review complaints of persons concerning the actions of any state or municipal agency providing services to children . . . ."

[8] The complaint alleges that the defendants caused harm to the plaintiff when they asked Ramos, the superintendent of Bridgeport public schools, what he intended to do about depictions of alleged child abuse in certain photographs. We agree with the defendants that holding state actors liable for inquiring whether schools are adequately addressing allegations of inappropriate conduct within their districts, especially when such inquiries are part of an investigation authorized by statute, would inhibit the efforts of the Office of the Child Advocate to discharge its statutory mandate.

———————————————————