******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MICHAEL DEVINE, ADMINISTRATOR (ESTATE OF
TIMOTHY DEVINE) *v.* LOUIS FUSARO, JR., ET AL.
(AC 42164)

DiPentima, C. J., and Keller and Norcott, Js.

*Syllabus*

The plaintiff administrator of the estate of the decedent, D, sought to recover
   damages from the defendants, four members of the tactical unit of the
   State Police, for the wrongful death of D following his suicide after a
   standoff with law enforcement on certain public property in Groton.
   The plaintiff's complaint alleged that, in response to a Groton police
   captain's request for the assistance of the tactical unit, the defendants
   arrived at the scene of the standoff, and, after several hours of unsuccess-
   ful negotiations with D, who was suicidal and armed with a handgun,
   they used less than lethal ammunition on him. D then shot himself in
   the head and died as a result of the gunshot. The trial court granted
   the defendants' motion to dismiss on the ground that the action was
   barred by the doctrine of sovereign immunity. In reaching its decision,
   the court determined that the wrongful death action, as alleged in the
   complaint, satisfied the four criteria of the test set forth in *Spring* v.
   *Constantino* (168 Conn. 563), and, therefore, it was brought against the
   defendants in their official, rather than individual, capacities. On the
   plaintiff's appeal to this court, *held* that the trial court properly granted
   the defendants' motion to dismiss the plaintiff's action on the ground
   of sovereign immunity: contrary to the plaintiff's contention, the four
   criteria of the *Spring* test were satisfied, and, therefore, the defendants
   were sued in their official, rather than their individual, capacities, as
   the defendants were state officials, the action against them concerned
   a matter in which they were representing the state and acting in the
   scope of their official police duties, the state was the real party in
   interest because the damages sought by the plaintiff were premised
   entirely on injuries alleged to have been caused by the official acts of
   the defendants, and a judgment against the defendants would impact
   how the State Police, and especially members of the tactical unit,
   respond to subsequent situations in which an armed individual occupies
   public property and is noncompliant with attempts to negotiate, as they
   may be hesitant to use less than lethal ammunition or similar tactics
   because of the risk of being sued in their individual capacities; moreover,
   notwithstanding the plaintiff's claim to the contrary, the trial court did
   not improperly consider a certain State Police manual in granting the
   motion to dismiss.

Argued January 14—officially released June 9, 2020

*Procedural History*

Action to recover damages for the wrongful death of
the plaintiff's decedent as a result of the defendants'
alleged negligence, brought to the Superior Court in
the judicial district of New London, where the court,
*Knox, J.*, granted the defendants' motion to dismiss and
rendered judgment thereon, from which the plaintiff
appealed to this court. *Affirmed.*

*Trent A. LaLima*, with whom were *Virginia Paino*,
certified legal intern, and, on the brief, *Hubert J. Santos*,
for the appellant (plaintiff).

*Stephen R. Finucane*, assistant attorney general, with
whom were *Matthew B. Beizer*, assistant attorney gen-
eral, and, on the brief, *William Tong*, attorney general,
for the appellees (defendants).

*Opinion*

KELLER, J. The plaintiff, Michael Devine, administrator of the estate of Timothy Devine (Devine), appeals from the judgment of the trial court rendered after the granting of the motion filed by the defendants, Louis Fusaro, Jr., Steven Rief, Michael Avery, and Kevin Cook, to dismiss his wrongful death action, which involves the suicide of Devine after a standoff with law enforcement, including the defendants, who are members of the tactical unit of the State Police. On appeal, the plaintiff claims that the court incorrectly dismissed the action on the ground that it was barred by sovereign immunity. In granting the motion to dismiss, the court concluded that the facts alleged in the complaint satisfied all four criteria of the test set forth in *Spring* v. *Constantino*, 168 Conn. 563, 362 A.2d 871 (1975), rendering the lawsuit an action brought against the defendants in their official capacities. We affirm the judgment of the trial court.

On December 6, 2017, the plaintiff filed a complaint alleging a wrongful death claim against the defendants.[1] The plaintiff amended the complaint on January 12, 2018. In his amended complaint, the plaintiff alleged the following relevant facts. On July 23, 2012, a detective from the Groton Police Department contacted Devine and advised him that he was under investigation for alleged misconduct. Devine declined the detective's request to go to the police station for questioning. Instead, Devine informed the Groton Police Department that he was contemplating suicide. That evening, Devine went to the University of Connecticut's Avery Point campus in Groton with a handgun. Groton police officers located Devine between 10 and 11 p.m. Members of the Groton Police Department attempted to negotiate with Devine. Negotiations were unsuccessful, and a Groton police captain requested assistance from the State Police tactical unit (tactical unit). "At approximately 11:45 p.m., the [tactical unit] including the defendants, arrived at the scene." Law enforcement officials continued to negotiate with Devine for several hours, without success.

"At 3:31 a.m. on July 24, 2012, [Fusaro] commanded members of the tactical [unit] to begin using [less than lethal] ammunition on Devine." Avery and Cook complied with Fusaro's orders and struck Devine with less than lethal ammunition. Rief subsequently ordered the tactical unit to fire less than lethal ammunition at Devine again. Avery and Cook complied with Rief's orders and struck Devine a second time. After the second round of less than lethal ammunition, Devine raised the handgun to his head and said to Rief, "Don't make me do this." Devine then lowered the handgun to his chest. Rief instructed the tactical unit to fire a third round of less than lethal ammunition at Devine. Devine was struck with less than lethal ammunition again.

Devine then raised the handgun to his head and shot himself in the temple. Devine died as a result of the self-inflicted gunshot.

On February 13, 2018, the defendants filed a motion to dismiss and accompanying memorandum of law, claiming that the trial court lacked subject matter jurisdiction because the action was barred by the doctrine of sovereign immunity or, alternatively, that the defendants were statutorily immune from suit under General Statutes § 4-165. On March 15, 2018, the plaintiff filed a memorandum of law opposing the defendants' motion to dismiss. The plaintiff also filed additional pleadings including a request for leave to amend the complaint in an attempt to remove and amend language in his amended complaint. Specifically, the plaintiff sought to correct the service addresses for three of the defendants and to eliminate language referring to the defendants as police officers who were "acting under color of law." The plaintiff also filed a partial withdrawal seeking to withdraw similar language from the complaint. The defendants objected to the plaintiff's attempts to amend the complaint. The court sustained the defendants' objections in its decision on the motion to dismiss. On June 21, 2018, using the January 12, 2018 amended complaint as the operative complaint, the court issued an order granting the motion to dismiss. In its memorandum of decision, the court outlined how it concluded that the cause of action alleged in the complaint satisfied the four criteria of the *Spring* test; see *Spring* v. *Constantino*, supra, 168 Conn. 568; and therefore was brought against the defendants in their official, rather than individual, capacities. In light of that conclusion, the court concluded that sovereign immunity shielded the defendants from suit, depriving the court of subject matter jurisdiction and, accordingly, dismissed the action.[2] This appeal followed.

We begin with the well established standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate conclusion and resulting grant of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Welwood*, 258 Conn. 425, 433, 780 A.2d 924 (2001). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005). "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those

facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.§ (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010). "Claims involving the doctrines of common-law sovereign immunity and statutory immunity, pursuant to § 4-165, implicate the court's subject matter jurisdiction. . . . [A] subject matter jurisdictional defect may not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [O]nce raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Citations omitted; internal quotation marks omitted.) *Kelly* v. *Albertsen*, 114 Conn. App. 600, 605, 970 A.2d 787 (2009).

"We have long recognized the common-law principle that the state cannot be sued without its consent. . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer [or agent] concerning a matter in which the officer [or agent] represents the state is, in effect, against the state. . . . Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant. . . . The doctrine of sovereign immunity protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." (Citation omitted; internal quotation marks omitted.) *Tuchman* v. *State*, 89 Conn. App. 745, 751, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005). Likewise, "[t]he doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty." (Internal quotation marks omitted.) *Kenney* v. *Weaving*, 123 Conn. App. 211, 215, 1 A.3d 1083 (2010).

"Whether a particular action is one against the state is not determined solely by referring to the parties of record. . . . If the plaintiff's complaint reasonably may be construed to bring claims against the defendants in their individual capacities, then sovereign immunity would not bar those claims. . . . To determine whether an action is against the state or against a defendant in his individual capacity, we look to the four criteria established by our Supreme Court in [*Somers* v. *Hill*, 143 Conn. 476, 479, 123 A.2d 468 (1956)] and as explained further in *Spring* v. *Constantino*, [supra, 168 Conn. 563]. If all four criteria are satisfied, the action is deemed to be against the state and, therefore, is barred. . . . The criteria are: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." (Citations omitted; internal quotation marks omitted.) *Kenney* v. *Weaving*, supra, 123 Conn.

App. 215–16; see also *Sullins* v. *Rodriguez*, 281 Conn. 128, 136, 913 A.2d 415 (2007) ("test set forth in *Spring* . . . is an appropriate mechanism . . . to determine the capacity in which the named defendants are sued in actions asserting violations of state law").

We now turn to the *Spring* criteria as they relate to the present case. First, consistent with the allegations in his complaint, the plaintiff concedes that the defendants held positions as state officials at the time of the relevant conduct and, therefore, that the first criterion of the *Spring* test is met. The plaintiff argues, however, that the remaining three criteria are not met and, therefore, the defendants were sued in their individual, rather than official, capacities. We disagree with the plaintiff and conclude that the remaining three criteria of the *Spring* test are satisfied.

With regard to the second criterion, we conclude that the action concerns a matter in which the defendants represented the state. The plaintiff purports that the defendants' use of less than lethal ammunition on Devine was beyond the scope of their duties as police officers and should be classified as an assault. We disagree with the plaintiff's contention because the alleged facts contained in the amended complaint in no way indicate that the defendants acted outside the scope of their official duties. Rather, the complaint alleges that, "[a]t approximately 11:45 p.m., the [tactical unit] including the defendants, arrived at the scene." Further, the complaint alleges that when Avery and Cook fired the less than lethal ammunition at Devine, they were acting on direct orders from Fusaro and Rief.[3] The complaint does not contain any allegations to suggest that the defendants ceased to act pursuant to their duties as state employees, and, therefore, we conclude that the second criterion is met because the action concerns a matter in which the defendants represented the state. See *Cimmino* v. *Marcoccia*, 149 Conn. App. 350, 359, 89 A.3d 384 (2014) (holding that second criterion of *Spring* test was met because defendants were "acting in furtherance of a joint investigation authorized by statute and initiated by the state agencies that employed them"); *Kenney* v. *Weaving*, supra, 123 Conn. App. 216 (holding that second *Spring* criterion was met when "[t]he allegedly reckless actions of the defendant were related to his duties as commissioner of the [D]epartment [of Motor Vehicles]").

The plaintiff further argues that in determining that the second criterion of the *Spring* test was met, the court impermissibly relied entirely on language in the complaint alleging that the defendants were "acting under color of law." We conclude, however, that the plaintiff mischaracterizes the court's analysis with respect to the second criterion. The plaintiff is correct that the court stated that "[the allegations with respect to the defendants acting under the color of law] suffi-

ciently show that the individual defendants represent the state." However, the court further states that, "[a]lthough this is sufficient to satisfy the second criterion, there is a separate bas[is] to do so. The additional factual allegations all concern the defendants acting in their official police functions. The plaintiff alleges that the . . . Groton police captain, Thomas Davoren, requested the presence of the [tactical unit], and the four defendants responded to the scene as members of and a part of the [tactical unit]." (Emphasis omitted.) We, therefore, reject the plaintiff's arguments and conclude that the court was correct in determining that the second *Spring* criterion was met.

Turning to the third criterion, we conclude that the state is the real party against whom relief is sought. Preliminarily, the plaintiff argues that when determining whether the action was brought against the defendants individually or in their official capacities, the court should consider the fact that the plaintiff specifically pleaded that the action was against the defendants in their individual capacities. We reject this portion of the plaintiff's argument for two reasons. First, we disagree that the action was specifically pleaded against the defendants in their individual capacities. Rather, the operative complaint pleaded that the action was brought against each of the defendants "who [were] employed as law . . . enforcement officer[s] by the state of Connecticut and acting under the color of law." Second, even if the plaintiff specifically pleaded against the defendants in their individual capacities, that fact would not be determinative of whether the state or the individual is the real party in interest. In *Cimmino* v. *Marcoccia*, supra, 149 Conn. App. 359, the plaintiff argued that "he unequivocally sued the defendants in their individual capacities only and that these allegations establish that the state is not the real party against whom relief is sought." (Internal quotation marks omitted.) In rejecting the plaintiff's argument, this court stated: "That the plaintiff purports to sue the defendants only in their individual capacities is not, in itself, determinative of whether the state is the real party in interest. See *Sullins* v. *Rodriguez*, [supra, 281 Conn. 136] ('test set forth in *Spring* and *Miller* [v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003)] is an appropriate mechanism . . . to determine the capacity in which the named defendants are sued in actions asserting violations of state law'); *Kenney* v. *Weaving*, supra, 123 Conn. App. 215–16 (we do not determine whether action is against state solely by referring to parties of record)." *Cimmino* v. *Marcoccia*, supra, 359. Instead, in determining whether the third criterion of the *Spring* test was satisfied, this court also looked to whether "[t]he damages sought by the plaintiff are premised entirely on injuries alleged to have been caused by the defendants in performing acts that were part of their official duties." Id., 359–60. Other cases from our Supreme and Appellate Courts

have held similarly. See, e.g., *Somers* v. *Hill*, supra, 143 Conn. 480 (state was real party in interest where damages sought were for injuries allegedly caused by state highway commissioner in carrying out acts for which state employed him); *Macellaio* v. *Newington Police Dept.*, 142 Conn. App. 177, 181, 64 A.3d 348 (2013) ("third criterion [of *Spring* test] is met because damages are sought for injuries allegedly caused by the defendant for performing acts that are a part of his official duties such that the state is the real party against whom relief is sought"); *Kenney* v. *Weaving*, supra, 123 Conn. App. 216–17 (third criterion of *Spring* test satisfied because "[d]amages are sought for injuries allegedly caused by the defendant for performing acts that are a part of his official duties").

Relying on the aforementioned case law, we conclude, on the basis of the operative complaint, that the defendants were acting pursuant to their official duties as members of the tactical unit when they deployed the use of less than lethal ammunition on Devine. The operative complaint alleges that following a request from the Groton police captain for the presence of the tactical unit, the defendants arrived on the scene at approximately 11:45 p.m. on July 23, 2012. The complaint also alleges that subsequently, the defendants began the use of less than lethal ammunition at 3:31 a.m. on July 24, 2012. The complaint cannot reasonably be construed to state that, at any point between the defendants' arrival and the commencement of their use of less than lethal ammunition, the defendants ceased to operate pursuant to their official duties as state employees. The allegations, viewed in the light most favorable to the plaintiff, state that the defendants arrived at the scene of a dangerous situation in which Devine was threatening to take his own life. Following unsuccessful negotiation attempts, which lasted for approximately four hours, the defendants made the strategic decision as members of the tactical unit to utilize less than lethal ammunition. Accordingly, because the damages sought by the plaintiff are premised on injuries allegedly caused by the official acts of the defendants, the state is the real party against whom relief is sought, and the third criterion of the *Spring* test is satisfied.

Finally, the fourth criterion of the *Spring* test is met because the judgment, though nominally sought against the officials, would operate to control the activities of the state or subject it to liability. A judgment against the defendants would impact how members of the State Police, and especially members of the tactical unit, respond and react to subsequent situations in which an armed individual occupies public property and is noncompliant with attempts to negotiate. Specifically, at the risk of being sued in their individual capacities, state officials may be hesitant to use less than lethal ammunition or similar tactics. See *Cimmino* v. *Marcoc-*

*cia*, supra, 149 Conn. App. 360 (holding that "[a]ny judgment against the defendants would impact the manner in which state officials conduct investigations" initiated by state child advocate and attorney general); see also *Henderson* v. *State*, 151 Conn. App. 246, 259, 95 A.3d 1 (2014) (holding that fourth criterion of *Spring* test met because "[a]ny judgment against the defendants would impact the manner in which state officials prosecute public nuisance actions and negotiate stipulated judgments"). Accordingly, we agree with the court's determination that the fourth criterion of the *Spring* test is satisfied. Because the four criteria of the *Spring* test have been satisfied, we determine that the defendants were not sued in their individual capacities but, rather, in their official capacities only.[4]

Finally, we address the plaintiff's argument that, in granting the motion to dismiss, the court should not have considered facts outside the complaint, namely, the Connecticut State Police Administration and Operations Manual (operations manual). We agree with the defendants' assertion that "there is absolutely nothing in the trial court's memorandum of decision suggesting that the trial court relied on the language from the operations manual. . . . Instead, the memorandum of decision addresses only the contents of the operative complaint." Indeed, the plaintiff even states that "the trial court did not indicate during argument or in its memorandum of decision whether the operations manual or the federal court's interpretation of it[5] factored into its ultimate ruling." (Footnote added.)The plaintiff's only claim is that the defendants referred to the operations manual in their memorandum of law in support of their motion to dismiss as well as during argument on the motion. Consistent with the weight of authority and in the exercise of our plenary review, we looked only to the facts in the operative complaint and did not extend our review to the contents of the operations manual. See, e.g., *Gold* v. *Rowland*, supra, 296 Conn. 200–201. We, therefore, reject the plaintiff's argument and conclude that the court did not improperly consider the operations manual in granting the motion to dismiss in favor of the defendants.

Accordingly, we conclude that the court properly granted the defendants' motion to dismiss on the ground of sovereign immunity.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff brought two other actions related to Devine's death. The plaintiff brought a civil rights action under 42 U.S.C. § 1983 (2012) in federal court against the same officers named as defendants in this case. *Estate of Devine* v. *Fusaro*, United States District Court, Docket No. 3:14-cv-01019 (JAM) (D. Conn. January 14, 2016). On January 14, 2016, the District Court granted the defendants' motion for summary judgment on the basis of qualified immunity. The District Court declined to exercise supplemental jurisdiction over state law claims and dismissed them without prejudice. On January 23, 2017, the United States Court of Appeals for the Second Circuit affirmed the District Court's judgment. See *Estate of Devine* v. *Fusaro*, 676 Fed.

Appx. 61, 64–65 (2017).

The plaintiff also filed a claim with the Connecticut Office of the Claims Commissioner, in which he sought the state's waiver of its sovereign immunity to allow him to bring his action against the state directly for negligence. That claim was withdrawn.

[2] In its memorandum of decision, the court stated that, "[b]ecause the court lacks subject matter jurisdiction due to sovereign immunity, the court does not reach the claim that the action is barred by statutory immunity."

[3] The complaint alleges: "At 3:31 a.m. on July 24, 2012, [Fusaro] commanded members of the tactical [unit] to begin using [less than lethal] ammunition on Devine."

[4] There are three recognized exceptions to sovereign immunity: "(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citations omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009). The plaintiff does not assert on appeal, nor did he assert in the action before the trial court, that any of the exceptions apply.

[5] The federal court referred to the operations manual in its order granting the defendants' motion for summary judgment in *Estate of Devine* v. *Fusaro*, United States District Court, Docket No. 3:14-cv-01019 (JAM) (D. Conn. January 14, 2016).

———————————————