******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL DEVINE, ADMINISTRATOR (ESTATE
OF TIMOTHY DEVINE) *v.* LOUIS
FUSARO, JR., ET AL.*
(AC 42164)

Prescott, Cradle and DiPentima, Js.

*Syllabus*

The plaintiff administrator of the estate of the decedent, D, sought to recover
damages from the defendants, four police officers who were members
of a tactical unit of the state police, for the wrongful death of D following
his suicide after a standoff with law enforcement on certain public
property in Groton. The plaintiff's complaint alleged that, in response
to a Groton police captain's request for the assistance of the tactical
unit, the defendants arrived at the scene of the standoff and, after several
hours of unsuccessful negotiations with D, who was suicidal and armed
with a handgun, they used less than lethal ammunition on him. D then
shot himself in the head and died as a result of the gunshot. The trial
court granted the defendants' motion to dismiss on the ground that the
action was barred by the doctrine of sovereign immunity. In reaching
its decision, the court determined that the wrongful death action, as
alleged in the complaint, satisfied the four criteria of the test set forth
in *Spring* v. *Constantino* (168 Conn. 563), and, therefore, it was brought
against the defendants in their official, rather than their individual,
capacities. On the plaintiff's appeal to this court, this court affirmed the
trial court's judgment. This court thereafter granted the plaintiff's motion
for reconsideration to address his claim that the panel misapplied the
*Spring* test by giving too little weight to his express assertion in the
complaint that he had elected to sue the defendants in their individual
capacities. On reconsideration, *held* that the trial court improperly
granted the defendants' motion to dismiss the plaintiff's action on the
ground of sovereign immunity: the plaintiff unequivocally elected to sue
the defendants in their individual capacities, as the operative complaint
stated that the defendants were sued in their individual capacities and
three of the four defendants were served with process at their usual
place of abode, which was required to sue the defendants as individuals,
rather than through the Office of the Attorney General, which would
indicate that the defendants had been sued in their official capacities;
moreover, in concluding that the state was the real party in interest,
the court failed to give proper deference to the express allegation in the
complaint that the plaintiff was suing the defendants in their individual
capacities and improperly concluded that, because the challenged con-
duct occurred while the defendants were acting in their official capaci-
ties, the plaintiff was suing them in their official, rather than their
individual, capacities.

Argued November 17, 2020—officially released July 6, 2021

*Procedural History*

Action to recover damages for the wrongful death of
the plaintiff's decedent as a result of the defendants'
alleged recklessness and gross negligence, brought to
the Superior Court in the judicial district of New Lon-
don, where the court, *Knox, J.*, granted the defendants'
motion to dismiss and rendered judgment thereon, from
which the plaintiff appealed to this court, *DiPentima,
C. J.*, and *Keller* and *Norcott, Js.*, which affirmed the
trial court's judgment; thereafter, this court granted the
plaintiff's motion for reconsideration. *Reversed; further
proceedings*.

*Trent A. LaLima*, with whom, on the brief, was

*Hubert J. Santos*, for the appellant (plaintiff).

*Clare E. Kindall*, solicitor general, with whom were *Matthew B. Beizer*, assistant attorney general, and, on the brief, *William Tong*, attorney general, and *Stephen R. Finucane*, assistant attorney general, for the appellees (defendants).

*Opinion*

PRESCOTT, J. This appeal requires us to determine whether the plaintiff in this wrongful death action seeking to recover money damages has sued four state police officers in their individual capacities or, conversely, whether the action is barred by sovereign immunity because the plaintiff has sued those officers only in their official capacities. We conclude that the plaintiff's complaint, properly construed, alleges a claim for money damages against the officers in their individual capacities.

The plaintiff, Michael Devine, as the administrator of the estate of the decedent, Timothy Devine (Devine), appeals from the judgment of the trial court dismissing on sovereign immunity grounds his wrongful death action against the defendant police officers, Louis Fusaro, Jr., Steven Reif, Michael Avery, and Kevin Cook.[1] On June 9, 2020, a panel of this court initially affirmed the judgment of the trial court. *Devine* v. *Fusaro*, 197 Conn. App. 872, 232 A.3d 1178 (2020). The panel agreed with the trial court that the action was barred by sovereign immunity because, after applying the test set forth in *Spring* v. *Constantino*, 168 Conn. 563, 568, 362 A.2d 871 (1975) (*Spring* test), the complaint should be construed as an action brought against the defendants in their official capacities only and, thus, against the state itself. *Devine* v. *Fusaro*, supra, 883. The plaintiff subsequently filed a motion for reconsideration en banc, in which he asserted, among other things, that the panel misapplied the *Spring* test by giving far too little weight to his express assertion in the complaint that he had elected to sue the defendants in their individual capacities.

The motion for reconsideration was granted by the panel, which rendered action on the motion by the full court unnecessary.[2] Upon reconsideration, we now conclude, for the reasons that follow, that the trial court improperly dismissed the action on the ground that it was barred by sovereign immunity. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.

The following facts and procedural history are relevant to the plaintiff's claim. On November 28, 2017, the plaintiff commenced the underlying wrongful death action.[3] The plaintiff filed the operative amended complaint on January 12, 2018. That complaint contains a single count directed against all of the defendants. In his complaint, the plaintiff alleged the following relevant facts: On the evening of July 23, 2012, Devine contacted the Groton Police Department to inform the police that he was contemplating suicide.[4] Thereafter, Devine went to the University of Connecticut's Avery Point campus in Groton armed with a handgun. Groton police officers located Devine between 10 and 11 p.m. near the water.

Members of the Groton Police Department attempted to negotiate with Devine. Negotiations were unsuccessful, and a Groton Police Department captain requested assistance from the state police tactical unit (tactical unit). "At approximately 11:45 p.m., the [tactical unit] including the defendants, arrived at the scene." Law enforcement officials continued to negotiate with Devine for several hours, without success.

"At 3:31 a.m. on July 24, 2012, [Fusaro] commanded members of the tactical [unit] to begin using [less than lethal] ammunition on Devine." Avery and Cook complied with Fusaro's orders and struck Devine with less than lethal ammunition. Rief subsequently ordered the tactical unit to fire less than lethal ammunition at Devine again. Avery and Cook complied with Rief's orders and struck Devine a second time. After the second round of less than lethal ammunition, Devine raised the handgun to his head and said to Rief, "Don't make me do this." Devine then lowered the handgun to his chest. Rief instructed the tactical unit to fire a third round of less than lethal ammunition at Devine. Devine was struck by less than lethal ammunition again. Devine then raised the handgun to his head and shot himself in the temple. Devine died as a result of the self-inflicted gunshot.

The plaintiff alleged in the complaint that "[t]he actions or omissions of the [d]efendants . . . were committed intentionally, and/or with reckless indifference to Devine's safety and health and/or with gross negligence . . . ."[5] The plaintiff further alleged that "[t]he intentional, reckless and grossly negligent actions or omissions of the [d]efendants proximately caused" Devine's death and caused damages to the plaintiff. Finally, the plaintiff alleged that "[t]he defendants are not entitled to qualified immunity for their actions."

On February 13, 2018, the defendants filed a motion to dismiss and accompanying memorandum of law, claiming that the trial court lacked subject matter jurisdiction over the plaintiff's action because it was barred by the doctrine of sovereign immunity or, alternatively, that the defendants were statutorily immune from suit pursuant to General Statutes § 4-165.[6] On March 15, 2018, the plaintiff filed a memorandum of law opposing the defendants' motion to dismiss. The plaintiff also filed additional pleadings including a request for leave to amend the complaint to remove or amend certain language in the operative complaint.[7] The defendants objected to the plaintiff's attempts to amend or alter the operative complaint, arguing that, because the motion to dismiss challenged the court's subject matter jurisdiction, the court was not permitted to entertain any amendments prior to an adjudication of the motion to dismiss. The court sustained the defendants' objections in its decision on the motion to dismiss.

On September 10, 2018, using the January 12, 2018

amended complaint as the operative complaint, the court, *Knox, J.*, issued an order granting the motion to dismiss. In its memorandum of decision, the court concluded that the factual allegations in the complaint established that all four criteria of the test set forth in *Spring* v. *Constantino*, supra, 168 Conn. 568, were satisfied, and, therefore, that the court could only construe the complaint as having been brought against the defendants in their official, rather than individual, capacities. In light of that conclusion, the court also concluded that sovereign immunity shielded the defendants from suit for money damages and deprived the court of subject matter jurisdiction. Accordingly, it dismissed the action. In its memorandum of decision, the court further stated that, "[b]ecause the court lacks subject matter jurisdiction due to sovereign immunity, the court does not reach the claim that the action is barred by statutory immunity." This appeal followed.

The plaintiff's sole claim on appeal is that the trial court improperly granted the defendants' motion to dismiss because it misapplied or misconstrued the *Spring* test, and, as a result, it improperly concluded that the plaintiff's action against the defendants was an action against the state and barred by the doctrine of sovereign immunity. In particular, the plaintiff argues that the court failed to give due consideration to the plaintiff's clearly expressed intent to sue the defendants in their individual capacities. The state argues in response that the court properly concluded that the facts as alleged in the complaint satisfied all four of the *Spring* test criteria and, because no exception to sovereign immunity applies, the court correctly dismissed the plaintiff's action for lack of jurisdiction. For the reasons that follow, we agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . Moreover, [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . As we must in reviewing a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, *construing them in a manner most favorable to the pleader*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 131–32, 913 A.2d 415 (2007).[8]

Although "the general principles governing sovereign immunity are well established"; *Smith* v. *Rudolph*, 330 Conn. 138, 143, 191 A.3d 992 (2018); courts have struggled to apply those principles consistently and logically—particularly in cases in which the sovereign immunity determination implicates concepts such as

individual versus official capacity liability and/or statutory immunity. Accordingly, it is appropriate to consider the broader legal landscape before turning to our discussion and application of the law to the facts of the underlying case. Ultimately, we conclude that a court's application of the so-called *Spring* test is unnecessary and ill-advised in a case such as the present one in which the plaintiff has expressed a clear and unambiguous choice in the operative complaint to sue a state official in his or her individual capacity. In such cases, the doctrine of sovereign immunity simply is not implicated. Any immunity to be afforded to a state official or employee sued in his or her individual capacity is limited to the statutory and personal immunity afforded under § 4-165. See *Martin* v. *Brady*, 261 Conn. 372, 374, 802 A.2d 814 (2002).[9]

"[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . ." (Internal quotation marks omitted.) *Cox* v. *Aiken*, 278 Conn. 204, 211, 897 A.2d 71 (2006). The doctrine of sovereign immunity "protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable." *Shay* v. *Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000), overruled in part by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). "[T]he practical and logical basis of the doctrine [of sovereign immunity] is today recognized to rest . . . on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds, and property. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Citation omitted; internal quotation marks omitted.) *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 65, 23 A.3d 668 (2011).

There are three recognized exceptions to the doctrine of sovereign immunity: "(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citations omitted.) *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 720, 937 A.2d 675 (2007). By their terms, only the first of these three exceptions applies in an action seek-

ing only monetary damages.[10]

Accordingly, if a plaintiff hopes to maintain an action for monetary damages against the state itself, he may do so only if such a suit is authorized pursuant to a clearly expressed statutory waiver of sovereign immunity or if the plaintiff first obtains a waiver from the Claims Commissioner. See General Statutes § 4-160;[11] *Miller* v. *Egan*, supra, 265 Conn. 317 ("[a] plaintiff who seeks to bring an action for monetary damages against the state must first obtain authorization from the [C]laims [C]ommissioner"); see also *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972) ("state is immune from suit unless the state, by appropriate legislation, consents to be sued" and "state's sovereign right not to be sued without its consent is not to be diminished by statute unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms or by force of a necessary implication" (internal quotation marks omitted)).

Rather than suing the state directly, a plaintiff instead may elect to sue a particular state official or employee. If, however, the plaintiff sues that person only in his or her official capacity as a representative of the state, that suit will be construed as the equivalent of a suit against the state itself and, without a valid waiver, the suit likewise will be barred by sovereign immunity. See *Miller* v. *Egan*, supra, 265 Conn. 313. To avoid a dismissal on sovereign immunity grounds, a plaintiff must elect to sue the state official in his or her individual capacity. By choosing to do so, however, the plaintiff takes on additional pleading and proof requirements needed to overcome a claim of statutory immunity afforded to state officials and employees pursuant to § 4-165, namely, that the plaintiff plead and establish some wanton, reckless, or malicious act. See footnote 6 of this opinion.

The policy interest underlying the legislature's grant of statutory immunity pursuant to § 4-165 is "the protection of state employees from liability for negligent acts that occur in the course of employment." *Hunte* v. *Blumenthal*, 238 Conn. 146, 153, 680 A.2d 1231 (1996); see also *Spring* v. *Constantino*, supra, 168 Conn. 571. In *Miller* v. *Egan*, supra, 265 Conn. 319, the court stated that § 4-165's grant of "statutory immunity to state employees has a twofold purpose. First, the legislature sought to avoid placing a burden upon state employment. Second, § 4-165 makes clear that the remedy available to plaintiffs who have suffered harm from the negligent actions of a state employee who acted in the scope of his or her employment must bring a claim against the state 'under the provisions of this chapter,' namely, chapter 53 of the General Statutes, which governs the [O]ffice of the [C]laims [C]ommissioner." (Footnote omitted.) The policy recognizes the reality that people would be reluctant to take on the responsi-

bilities inherent in many state positions if they could be held liable in the event that they acted negligently. The statute strikes a balance by immunizing state officials and employees for negligent acts only. It does not provide immunity for acts deemed wanton, reckless, or malicious, presumably in order to deter those individuals from engaging in such seriously wrongful conduct.

Our Supreme Court has described the relationship that exists between the common-law doctrine of sovereign immunity and the statutory immunity provided by § 4-165 in the following way: the former is "raise[d] as a shield from the claims against [defendants] in their official capacities" and the latter is "raise[d] as a shield from the claims against [defendants] in their individual capacities." *Shay* v. *Rossi*, supra, 253 Conn. 162; see also *Mercer* v. *Strange*, 96 Conn. App. 123, 128, 899 A.2d 683 (2006) (it is well settled that defense of sovereign immunity is applicable only to claims brought directly against state itself or against state employees acting in official capacities, whereas defense of statutory immunity is applicable to claims brought against state employees acting in individual capacities).

Accordingly, a plaintiff who claims to have suffered some compensable injury as a result of actions taken by a state official or employee is faced with difficult choices in electing to commence a legal action. Chief among those choices is the decision whether to sue a state official as an individual or in his or her official capacity, each of which presents its own advantages and disadvantages.[12] Courts should not disregard these choices if they are clearly expressed in the pleadings. See *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 607 n.11, 211 A.3d 976 (2019) ("[a]s the master of the complaint, the plaintiff is free to decide what theory of recovery to pursue"); *Miller* v. *Egan*, supra, 265 Conn. 309 (agreeing that "the right of a plaintiff to recover is limited by the allegations of [his] complaint" and warning courts not to "countenance a variance [from the allegations of a complaint] which alters the basic nature of a complainant's cause of action" (internal quotation marks omitted)).

A problem arises, however, whenever the plaintiff names a state official or employee as a defendant in an action without clearly designating whether the plaintiff is suing that person in his or her individual or official capacity. Our Supreme Court has affirmed that the "test set forth in *Spring* and *Miller* [v. *Egan*, supra, 265 Conn. 301] is an appropriate mechanism . . . to determine the capacity in which the named defendants are sued in actions asserting violations of state law . . . ." *Sullins* v. *Rodriguez*, supra, 281 Conn. 136.

For the reasons that follow, we do not read the precedent of our Supreme Court to require a court to apply the *Spring* test if the complaint unequivocally states the capacity in which the defendant is sued. Indeed,

closer examination of *Spring* and our Supreme Court's application of the *Spring* test in *Miller* reveals that the test is not well suited for and was never expressly intended to apply to instances in which a plaintiff has made a clearly expressed election in the complaint to sue a state official in his or her individual capacity. The utility of the *Spring* test, at least as it has been applied by our Supreme Court, is far narrower. Nevertheless, even a cursory review of decisions of our trial and appellate courts demonstrates that courts have construed complaints as effectively having been brought against the state even in the face of clear and contrary indications in the complaint and elsewhere in the record that the plaintiff has chosen to sue the defendant in an individual capacity. Accordingly, we are concerned that, if courts continue to apply the *Spring* test in such an expansive manner, they risk misconstruing most complaints brought against a state official or employee for actions taken while in service of the state as an action against that person only in his or her official capacity and, thus, necessarily against the state.

We begin our analysis with a discussion of *Spring* and *Miller*. In *Spring*, the plaintiff brought an action for professional malpractice against a public defender who had been assigned to represent her in a criminal matter. *Spring* v. *Constantino*, supra, 168 Conn. 564. The attorney general filed a special appearance on behalf of the defendant and filed a motion to dismiss the action, in which he claimed that the defendant had immunity from suit. Id. The defendant advanced three grounds for immunity: judicial immunity, common-law sovereign immunity, and statutory immunity. Id., 564–65. The trial court dismissed the action and the plaintiff appealed.

In discussing sovereign immunity, our Supreme Court in *Spring* indicated that the underlying action had been brought against the defendant "in his personal capacity," but that it agreed with the attorney general's assertion, quoting from *Somers* v. *Hill*, 143 Conn. 476, 479, 123 A.2d 468 (1956), that "[t]he fact that the state is not named as a defendant does not conclusively establish that the action is not within the principle which prohibits actions against the sovereign without its consent. . . . The vital test is to be found in the essential nature and effect of the proceeding." (Internal quotation marks omitted.) *Spring* v. *Constantino*, supra, 168 Conn. 568. The *Spring* decision, however, omits the sentence immediately preceding the quoted passage from *Somers*. That sentence adds important context to the stated rule: "Whether a particular action is one against the state *is not determined solely by referring to the parties of record*." (Emphasis added.) *Somers* v. *Hill*, supra, 479. Thus, the quoted passage from *Somers*, considered in its full context, simply recognizes that a plaintiff cannot avoid application of sovereign immunity simply by naming a state official as the defendant rather

than the state directly. There is nothing in either the *Spring* or *Somers* decision that elucidates the extent to which this rule applies in suits expressly brought against a state official in his or her individual, rather than official, capacity.

The court in *Spring* set forth the following four criteria, also taken from its earlier decision in *Somers*, "for determining whether [an action] is, in effect, one against the state and cannot be maintained without its consent: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." (Internal quotation marks omitted.) *Spring* v. *Constantino*, supra, 168 Conn. 568. The court, however, provided no guidance on how the individual criteria should be interpreted or applied, indicating only that it was "questionable whether *any of these elements exist in the present action*, but this need not be decided because the first element—that a state official has been sued—is not satisfied. A public defender in representing an indigent [client] is not a public official as that term has been defined by this court." Id. The court concluded: "The public defender when he represents his client is not performing a sovereign function and is therefore not a public or state official to whom the doctrine of sovereign immunity applies." Id., 569.

The decision in *Spring*, thus, was decided only on the first criterion. The opinion is silent with respect to the fact that the plaintiff expressly had sued the public defender in his "personal capacity" or to what extent that fact entered into the court's dicta that questioned whether any of the other criteria, including the third, was met. Ultimately, the court in *Spring* concluded that the public defender did not enjoy any of the immunities advanced by the attorney general, and it reversed the judgment of the court and remanded for further proceedings.[13] Id., 576.

We turn next to our Supreme Court's decision in *Miller* v. *Egan*, supra, 265 Conn. 301, the only case in which our Supreme Court has had occasion to apply the *Spring* test. In *Miller*, a former county sheriff's office employee brought an action against the state and against several sheriffs alleging defamation, false imprisonment, civil conspiracy, and violations of his civil rights. Id., 307. The complaint brought against the sheriffs asserted claims against them in their official capacities. Nevertheless, on appeal from the trial court's dismissal of his action on sovereign immunity grounds, the plaintiff claimed that his complaint sued the sheriffs "in their individual capacities, as well as in their official capacities." Id. In support of his argument that he had in fact sued the defendants in their individual capacities,

the plaintiff pointed to the fact that he had named each of the sheriffs separately as a defendant in the complaint along with the state. Id.

In addressing that claim, the Supreme Court first stated: "*If the plaintiff's complaint reasonably may be construed to bring claims against the defendants in their individual capacities*, then sovereign immunity would not bar those claims." (Emphasis added.) Id., citing *Martin* v. *Brady*, supra, 261 Conn. 374. Next, the court indicated that resolution of whether a state official was sued in an individual or official capacity, however, did not turn on merely identifying a state official as a party in the complaint, agreeing with the defendants that the plaintiff had made repeated express allegations in the complaint that he was suing the sheriffs in their official capacities. *Miller* v. *Egan*, supra, 265 Conn. 307–308. Noting that construction of a pleading is a question of law, over which appellate courts exercise plenary review; see *Home Oil Co.* v. *Todd*, 195 Conn. 333, 340, 487 A.2d 1095 (1985); the court next stated that "[t]he determination of whether the plaintiff's complaint alleged claims against the defendants in their individual capacities is governed by the [*Spring* test]." *Miller* v. *Egan*, supra, 308. The court noted that the plaintiff conceded that the first two criteria of the *Spring* test were met, but argued that "*the third criterion is not met* because the complaint sought relief both from the state and from the individual defendants." (Emphasis added.) Id. Although the complaint before the court in *Miller* named specific state officials as parties, the complaint in *Miller*, unlike in the present case, contained no express allegation by the plaintiff that he sought to sue the state officials in their individual capacities at the time the action was commenced. Nor was that assertion made in response to the defendants' motion to dismiss.

To the contrary, as Justice Borden emphasized in *Miller*, "[n]*owhere in the plaintiff's complaint did he allege that he was bringing an action against the defendants in their individual capacities*. Instead . . . the complaint repeatedly alleged that the defendants acted in their official capacity. We agree with the defendants that the right of a plaintiff to recover is limited by the allegations of [his] complaint . . . . We do not countenance a variance [from the allegations of a complaint] which alters the basic nature of a complainant's cause of action . . . ." (Emphasis added; internal quotation marks omitted.) Id., 309.

In addition to the complaint, the court also considered other aspects of the record before it, stating: "The plaintiff's arguments to the trial court in opposition to the motion to dismiss further support the conclusion that the plaintiff had, until now, sought relief solely from the state. The defendants' motion to dismiss the entire complaint was based on the doctrine of sovereign

immunity, which they argued deprived the court of subject matter jurisdiction and required the plaintiff to exhaust his administrative remedies by proceeding through the [O]ffice of the [C]laims [C]ommissioner. The plaintiff could have responded, in his objection to the motion to dismiss, that his complaint had brought claims against the individual defendants, not only in their official capacities, but also in their individual capacities, *and could have argued that sovereign immunity was inapplicable to any individual capacity claims*, but he did not do so. Instead, the plaintiff argued that the legislature had [statutorily] waived sovereign immunity . . . and that he was not required, [under] § 4-165, to exhaust his administrative remedies because he had alleged in the complaint that the defendants' actions were reckless and malicious. The trial court's memorandum of decision specifically referenced the latter argument and concluded that it was inapplicable to the present case because the plaintiff had asserted his claims against the defendants solely in their official capacities *and sought relief solely from the state*. The plaintiff did not seek clarification or articulation based on the trial court's determination. . . . [T]he plaintiff had multiple opportunities in the trial court to argue that his complaint sought relief from the defendants in their individual capacities, in addition to seeking relief from the state, but he failed to do so." (Citations omitted; emphasis altered.) Id., 309–10.

Finally, the court in *Miller* stated: "We decline to permit the plaintiff now, merely by making a conclusory statement that he also sought relief against the individual defendants, to avoid dismissal of the complaint. Otherwise, it would simply be too easy for a plaintiff, who originally had alleged causes of action against a state officer only in his official capacity, thus seeking relief solely against the state, subsequently to claim that he also sought relief against the state officer in his individual capacity. By utilizing this tactic, a plaintiff could, at least partially, avoid dismissal of a complaint due to sovereign immunity and subject the unsuspecting state officer to personal liability." Id., 310.

Only after a thorough review of the complaint and finding it utterly lacking *any* indication that the plaintiff had attempted to sue the defendants in their individual capacities, did the court conclude that the third criterion of the *Spring* test had been met as to all counts. Id., 311. With respect to the fourth criterion, the court concluded that it was satisfied "because the complaint sought relief solely against the state [and therefore] a judgment against the state would subject it to liability." Id.[14]

At least one state trial court, relying on the analysis in *Miller*, persuasively has held that the four part *Spring* test has no applicability in the context of a case in which the plaintiff's complaint expressly provides that

state officials have been sued in their individual capacities. In *Walsh* v. *State*, Docket No. X03-CV-05-4006939, 2006 WL 391306 (Conn. Super. February 1, 2006), the administrators of the estate of a prisoner who had died in his cell by hanging filed an action against a number of state officials, expressly stating in the complaint that they did so in their individual capacities. Although the complaint primarily raised federal civil rights violations, the officials nevertheless filed a motion to dismiss claiming that all but one count was barred by common-law sovereign immunity and state statutory immunity. Id., *1–2. The defendants urged the court, despite clear indication in the complaint that the defendants were sued in their individual capacities, to apply the *Spring* test and "look beneath the pleadings and conclude that while the plaintiffs purport to sue [the] defendants in their individual capacities, [the] defendants are in actuality being sued in their capacities as state employees discharging their statutory duties." Id., *2. The plaintiff responded, among other things, that the *Spring* test was inapplicable, arguing in relevant part that the test "has only limited viability in light of the language used by Justice Borden in [*Miller*] [that] [i]f the plaintiffs' complaint reasonably may be construed to bring claims against the defendants in their individual capacities, then sovereign immunity would not bar these claims." (Emphasis omitted; internal quotation marks omitted.) Id., *3, citing *Miller* v. *Egan*, supra, 265 Conn. 307.[15]

Judge Lavine, at the time a Superior Court judge, agreed with the plaintiff's assertion. In discussing the applicability of the *Spring* test, the court stated: "Even if the state sovereign immunity defense were available, the court concludes that it would not require dismissal of the challenged counts in this case *given the nature of the allegations in the complaint*. The court shares [the] plaintiffs' view that Justice Borden's above-quoted statement in *Miller* v. *Egan*, [supra, 265 Conn. 307] calls into question the continuing vitality of the four part test of *Spring* v. *Constantino*, [supra, 168 Conn. 563].[16] Having reviewed the complaint, the court concludes that it may reasonably be construed to bring claims against the defendants in their individual capacities. *In fact, it does so explicitly and repeatedly. . . .* In light of these allegations, *which the court must construe in a manner most favorable to the pleader . . .* the court declines to construe the complaint as [the] defendants suggest." (Citations omitted; emphasis added; footnote added; internal quotation marks omitted.) *Walsh* v. *State*, supra, 2006 WL 391306, *4. In short, like in *Miller*, Judge Lavine gave proper deference to the plaintiff's clear and unambiguous election, as expressed in the complaint, to sue the defendants in their individual capacities and refused to sanction the defendants' effort to undermine the plaintiff's choice of defendant by applying the *Spring* test, which the court determined was inapplicable in light of the guidance in *Miller*.

With the foregoing legal background and discussion in mind, we turn to the present case. The plaintiff, in his operative complaint, asserted in the opening paragraphs in which he identifies the parties to the action that "[t]he defendants are sued in their individual capacit[ies]." This statement represents an unequivocal election on the part of the plaintiff regarding the legal theory of liability that he intended to pursue.[17] Unlike in *Miller*, the plaintiff did not wait until his action was dismissed on the ground of sovereign immunity to clearly assert his intent to sue the defendants in their individual capacities. Because there is only one reasonable construction of the plaintiff's direct assertion that he sought to sue the defendants in their individual capacities, pursuant to *Miller*, "then sovereign immunity would not bar these claims." *Miller* v. *Egan*, supra, 265 Conn. 307. The trial court appears not to have considered properly this unequivocal statement in reaching its contradictory conclusion, after application of the *Spring* test, that the action had been brought against the defendants only in their official capacities and, thus, by implication, against the state.

Looking to other aspects of the record, as the court did in *Miller*, we note that the manner in which the action was commenced provides additional support for construing the complaint as one brought against the defendants in their individual capacities. Rather than having served the defendants through the Office of the Attorney General, which would have been expected in an action brought against the defendants in their official capacities, process was served on three of the four defendants at their "usual place of abode" as required to sue the defendants as individuals.[18] It was incumbent upon the court to construe the complaint, if possible, in a manner consistent with the plaintiff's choices as the "master of the complaint"; *Reclaimant Corp.* v. *Deutsch*, supra, 332 Conn. 607 n.11; and in favor of jurisdiction over the action. Consistent with our Supreme Court's statement in *Miller*, we conclude that it was improper for the court to have treated the case like one in which a plaintiff had sued a state official or employee without designating whether he intended to sue that person in his official or individual capacity. It is only in the absence of an express designation by the plaintiff in the complaint regarding the capacity in which a state official or employee has been sued that the *Spring* test offers any real utility.

Even if our Supreme Court were to disagree with our construction of the true purpose of the *Spring* test, or were to conclude that it was appropriate under the circumstance for the trial court to have applied the *Spring* test in this matter, particularly in light of the fact that its application was advocated for by both sides, we would nevertheless still disagree with the trial court's ultimate application of the test, particularly with

respect to the third criterion.

We agree with the court that the first two elements of the *Spring* test are satisfied. With respect to the first criterion, the plaintiff concedes, as he must, that at all times relevant to this action, the defendant police officers held positions as state officials. By citing the officers as the defendants in his complaint, it is undisputed that "a state official has been sued" and, therefore, the first criterion of the *Spring* test is met. See *Spring* v. *Constantino*, supra, 168 Conn. 568.

With regard to the second criterion, namely, that "the suit concerns some matter in which that official represents the state"; id.; it is equally indisputable that the present action concerns a matter in which the defendants are alleged to have been acting while on duty as police officers and, thus, representing the state. Although the plaintiff argues that the defendants' use of less than lethal ammunition on Devine was conduct that went beyond the scope of their duties as police officers and, thus, should be characterized as an assault, the facts as alleged in the amended complaint in no way indicate that the defendants were acting other than in their capacities as police officers. Rather, the complaint alleges that the defendants all responded to the scene as members of the tactical unit and that Avery and Cook fired the less than lethal ammunition at Devine in response to direct orders given by Fusaro and Rief, acting in their command roles. The complaint contains no allegations suggesting that any of the defendants ever ceased to act pursuant to their roles as state employees, and, therefore, the second criterion of the *Spring* test is met.[19] See *Cimmino* v. *Marcoccia*, 149 Conn. App. 350, 359, 89 A.3d 384 (2014) (second criterion of *Spring* test was met because defendants were allegedly "acting in furtherance of a joint investigation authorized by statute and initiated by the state agencies that employed them"); *Kenney* v. *Weaving*, 123 Conn. App. 211, 216, 1 A.3d 1083 (2010) (second criterion was met because "[t]he allegedly reckless actions of the defendant were related to his duties as commissioner").

We do not agree, however, with the trial court's application of the third criterion, which asks whether "the state is the real party against whom relief is sought." *Spring* v. *Constantino*, supra, 168 Conn. 568. As we have already discussed, the court failed to give proper deference to the express allegation in the plaintiff's complaint that he sought relief from the officers *in their individual capacities*. In concluding to the contrary that the state was the real party in interest, the trial court stated that "[t]he plaintiff's claims arise from the injuries allegedly caused by the defendants' conduct that occurred during and as part of their official duties as state employees" and thus it followed that "they acted in their official capacities, implicating the state." Given that the purpose of the *Spring* test is to determine

whether the defendants were sued in their official or individual capacities, to conclude that the third prong of that test is met on the basis of a determination that the defendants acted in their official capacities is circular logic.

We acknowledge that courts, including this one, have, on occasion, concluded that the state is the real party in interest solely because the injuries alleged were the result of the actions by an individual taken during the performance of his or her official state duties. See, e.g., *Cimmino* v. *Marcoccia*, supra, 149 Conn. App. 359–60; *Macellaio* v. *Newington Police Dept.*, 142 Conn. App. 177, 181, 64 A.3d 348 (2013). In so concluding, those courts have employed language similar to that used by the trial court in the present case. The use of such language, however, risks obscuring the true purpose of the *Spring* test—determining *in the absence of an expressed intent* whether a state official has been sued in his or her official or individual capacity—and conflating the second criterion of the *Spring* test with the third criterion thereby suggesting, through implication, that anytime a state employee or official is sued for actions conducted while carrying out official duties, the state itself, rather than the official, necessarily must be the real party in interest.

By way of example, in *Macellaio* v. *Newington Police Dept.*, supra, 142 Conn. App. 181, this court stated that "[t]he third criterion of [the *Spring* test] [was] met because damages [were] sought for injuries allegedly caused by the [employee] for performing acts that [were] a part of his official duties such that the state is the real party against whom relief is sought." In *Cimmino* v. *Marcoccia*, supra, 149 Conn. App. 359–60, this court similarly held that the third criterion of the *Spring* test was satisfied because the "damages sought by the plaintiff [were] premised entirely on injuries alleged to have been caused by the [employees] in performing acts that were part of their official duties." If the quoted language continues to be employed as supporting the conflated rationale that we have identified, a plaintiff seeking to sue a state official on a theory of individual liability would almost always be precluded from doing so because of sovereign immunity because the actions of the state official always would be attributed to the state, even if the actions were alleged to be reckless, wanton, or malicious in nature.[20]

Importantly, applying the *Spring* test so broadly also risks undermining the legislature's purpose for enacting § 4-165, which was to protect state officials and employees from liability for negligent acts while performing official duties. If all acts taken by a state official or employee while in service of the state are automatically construed as actions taken in his or her official capacity attributable to the state, liability for those acts would be barred by sovereign immunity, rendering the need

for statutory immunity pursuant to § 4-165 superfluous and unnecessary. See, e.g., *Kenney* v. *Weaving*, supra, 123 Conn. App. 219 n.5 (determining on basis of *Spring* test that defendant was entitled to defense of sovereign immunity "and, therefore, the plaintiff cannot maintain her cause of action against him regardless of whether she could demonstrate recklessness pursuant to § 4-165"). If a suit seeking damages from state officials carrying out their duties as agents of the state *always* will be determined to be a suit against the state, thereby implicating sovereign immunity, there would never be a real need for § 4-165. It is axiomatic that "[n]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . [so that] no word [or phrase] in a statute is to be treated as superfluous." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 434–35, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

Consequently, we agree with the plaintiff's argument that, in considering whom the action was brought against—i.e., the real party in interest—the court was required to give far greater weight to the fact that the plaintiff specifically pleaded that he brought the action against the defendants in their individual capacities. This is not a case in which a state official has been named as a defendant without any indication of whether that person is being sued in an individual capacity or only in an official capacity as an agent of the state. As the plaintiff correctly points out, he specifically and clearly pleaded claims against the defendants in their individual capacities.[21] Although, as we have already noted, the complaint also states that the defendants "[were] employed as law . . . enforcement officer[s] by the state of Connecticut and *acting under the color of law*," nowhere in the complaint does the plaintiff indicate by express language that his intent was to sue the defendants in their official capacities, and therefore we are unconvinced that this language alone is sufficient to negate the express allegation to the contrary. See footnote 17 of this opinion. Having determined that the third criterion is not met, it is unnecessary to reach whether the fourth criterion of the *Spring* test would be satisfied under the facts alleged.[22]

To summarize, because we have determined that the plaintiff's wrongful death action was brought against the defendants in their individual capacities, we conclude that the trial court improperly granted the motion to dismiss on sovereign immunity grounds.[23] Accordingly, we reverse the judgment and remand the matter to the court with direction that it vacate its granting of the motion to dismiss and that it consider the remaining ground raised in the motion, namely, whether the plaintiff's complaint sufficiently alleges reckless, wanton, or malicious conduct such that, if proven, the defendants

would not be entitled to statutory immunity under § 4-165.[24]

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

* This opinion supersedes the opinion of this court in *Devine* v. *Fusaro*, 197 Conn. App. 872, 232 A.3d 1178 (2020).

[1] Prior to filing the underlying action, the plaintiff brought a federal civil rights action in federal court against the same officers in which he also raised his state law claims. See *Estate of Devine* v. *Fusaro*, Docket No. 3:14-cv-01019 (JAM), 2016 WL 183472 (D. Conn. January 14, 2016). On January 14, 2016, the District Court granted the defendants' motion for summary judgment on the federal claims on the basis of qualified immunity. Id., *1. The District Court also declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. Id., *9. On January 23, 2017, the United States Court of Appeals for the Second Circuit affirmed the District Court's judgment. See *Estate of Devine* v. *Fusaro*, 676 Fed. Appx. 61, 64–65 (2d Cir. 2017).

Additionally, in July, 2013, the plaintiff filed a notice of claim with the state Office of the Claims Commissioner, in which he sought a waiver of the state's sovereign immunity to allow him to bring an action against the state for negligence. The plaintiff, however, in response to a motion to dismiss filed by the state, withdrew the notice of claim in December, 2014. The present action followed.

[2] Due to the unavailability of some members of the original panel, reargument was heard by the present panel with no objection by the parties. In addition to granting reconsideration, this court ordered the parties sua sponte to file supplemental briefs addressing whether "[f]or the purposes of deciding a motion to dismiss, does the test in *Spring* v. *Constantino*, [supra, 168 Conn. 563], for assessing whether a state employee has been sued in his individual or official capacity apply in light of *Martin* v. *Brady*, 261 Conn. 372, [802 A.2d 814] (2002)."

[3] With respect to Fusaro, Reif, and Avery, the marshal's return to court indicates that service of process was made by abode service. Service on Cook was made in hand to a state trooper at the Connecticut State Police Headquarters in Middletown, who, according to the return, was authorized to accept legal service for Cook. "Pursuant to [General Statutes] § 52-57 (a), a defendant in any civil action must be served in hand or at his usual place of abode. This requirement includes civil suits brought against state defendants who are sued in their individual capacities. . . . [By way of example], a plaintiff who serves a state defendant pursuant to [General Statutes] § 52-64 (a) by leaving a copy of the process at the Office of the Attorney General has properly served the defendant only in his or her official capacity and has failed to properly serve the defendant in his or her individual capacity." (Internal quotation marks omitted.) *Jan G.* v. *Semple*, 202 Conn. App. 202, 220, 244 A.3d 644, cert. denied, 336 Conn. 937, 249 A.3d 38 (2021). Although only three of the four defendants appear to have been served "at his usual place of abode," any claim that the court lacked personal jurisdiction over the defendants in their individual capacities on the basis of improper service of process or otherwise has been waived by the defendants as a result of their failure timely to file a motion to dismiss on that basis with the trial court. See Practice Book §§ 10-30 and 10-32; *Pitchell* v. *Hartford*, 247 Conn. 422, 433, 722 A.2d 797 (1999).

[4] In its decision in the federal court action brought pursuant to 42 U.S.C. § 1983, the District Court indicated that the record before it established that a detective from the Groton Police Department had contacted Devine earlier that day and "told him that she wished to discuss allegations of serious and scandalous criminal misconduct that had been made against Devine. At first, Devine agreed to come [to the police department] but [soon after] called [the detective] back to say that he would not meet with [her]. He told the detective that he had his [handgun] on his lap and was pulling the hammer back and that 'if a single person walks up on me, I will put a round through my head.' " *Estate of Devine* v. *Fusaro*, Docket No. 3:14-cv-01019 (JAM), 2016 WL 183472, *1 (D. Conn. January 14, 2016); see also footnote 1 of this opinion.

[5] The plaintiff alleged that the acts or omissions of the defendant that supported his claim of "wrongful death due to recklessness or gross negli-

gence" consisted of but were not limited to (1) "[u]nnecessarily exacerbating tensions in the confrontation," (2) "[f]ailing to appropriately respond to an individual in a mental illness crisis," (3) "[u]nreasonably, excessively assaulting Devine with less-lethal ammunition," (4) "[c]ontinuing to exacerbate tensions and assault Devine, increasing the chances for violence," and (5) "fail[ing] to stand down after responding to the scene."

[6] General Statutes § 4-165 (a) provides: "No state officer or employee shall be personally liable for damage or injury, *not wanton, reckless or malicious*, caused in the discharge of his duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." (Emphasis added.)

[7] Specifically, the plaintiff sought to correct addresses attributed to the defendants in the complaint which differed from the addresses at which process was served as reflected in the return of service. The plaintiff also sought to eliminate language that referred to the defendants as police officers who were acting "under color of law." The plaintiff also filed a partial withdrawal seeking to withdraw this language from the complaint. According to the plaintiff, the "under color of law" language mistakenly was transferred from the allegations in the defunct federal lawsuit, in which it was necessary to show that the officers had acted "under color of law" to establish their liability under 42 U.S.C. § 1983. See *Adickes* v. *S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

[8] This is, of course, the standard that applies when, as in the present case, "a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone . . . ." *Conboy* v. *State*, 292 Conn. 642, 651, 974 A.2d 669 (2009). If, however, "the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . [or] other types of undisputed evidence . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; emphasis omitted; footnotes omitted; internal quotation marks omitted.) Id., 651–54.

[9] *Martin* was a certified appeal from a decision of this court; *Martin* v. *Brady*, 64 Conn. App. 433, 780 A.2d 961 (2001); in which we had affirmed the trial court's dismissal of an action brought against several state police officers on sovereign immunity grounds. *Martin* v. *Brady*, supra, 261 Conn. 374. The certified issues were "[w]hether the Appellate Court properly concluded that *Binette* v. *Sabo*, [244 Conn. 23, 710 A.2d 688 (1998)], does not permit the plaintiff's tort action because (1) the defendants are protected by the doctrine of sovereign immunity and (2) the facts are not sufficiently egregious?" *Martin* v. *Brady*, 258 Conn. 919, 782 A.2d 1244 (2001). Although the defendants fully briefed the certified questions, at oral argument they conceded that, construing the complaint properly, the plaintiff had sued them in their individual, rather than their official, capacities and, therefore, sovereign immunity was not really at issue. Rather, "the only jurisdictional question remaining was whether [the defendants] were protected by the statutory, personal immunity provided by § 4-165." *Martin* v. *Brady*, supra, 261 Conn. 374. The Supreme Court agreed that the defendants were statutorily immune from suit, and they affirmed this court's judgment on that alternative ground. Id. Although the Supreme Court in *Martin* did not discuss

the *Spring* test or sovereign immunity, the procedural posture of that appeal helps illustrate the point we seek to make in the present case: namely, if a plaintiff elects to sue a state official in his or her individual capacity and makes that choice clear in the operative complaint, sovereign immunity cannot properly act as a bar to the action; rather, the issue becomes one of statutory immunity only.

[10] The second and third exceptions, by their terms, are applicable only in those actions seeking declaratory or injunctive relief. In such an action, the complaint must contain sufficient factual allegations that, if proven, would support a finding that a state official or employee has acted unconstitutionally or in excess of statutory authority to avoid dismissal on sovereign immunity grounds. See *Markley* v. *Dept. of Public Utility Control*, supra, 301 Conn. 66. The rationale behind these exceptions is that, "[i]n those cases in which it is alleged that the defendant officer is proceeding under an unconstitutional statute or in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. Moreover, the government cannot justifiably claim interference with its functions when the acts complained of are unconstitutional or unauthorized by statute." (Internal quotation marks omitted.) Id., 66 n.11.

[11] General Statutes § 4-160 (a) provides in relevant part: "Whenever the Claims Commissioner deems it just and equitable, the Claims Commissioner may authorize suit against the state on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable. . . ."

[12] For example, whereas the state ordinarily may represent a potential "deep pocket" for the payment of damages, it may be legally difficult, time consuming, and ultimately fruitless to seek a waiver of sovereign immunity from the Claims Commissioner if one is not clearly provided for by statute. Conversely, although the difficulties associated with overcoming the hurdle of sovereign immunity theoretically may be avoided by suing a state official or employee in his or her individual capacity, the trade-off requires the plaintiff to allege and ultimately prove far more than merely negligent conduct on the part of the official, but rather some wanton, reckless, or malicious act. Otherwise, the plaintiff risks dismissal of the action on statutory immunity grounds. See General Statutes § 4-165.

[13] We note that the legislature has since added public defenders to the definition of "state officers and employees" entitled to statutory immunity under § 4-165. See General Statutes § 4-141 (5) (B); *Gross* v. *Rell*, 304 Conn. 234, 248 n.7, 40 A.3d 240 (2012).

[14] The court also rejected the plaintiff's argument that, even if sued only in their official capacities, the defendants had acted "in excess of their statutory authority" and thus the matter fell within an exception to the sovereign immunity doctrine. *Miller* v. *Egan*, supra, 265 Conn. 312. The court determined that the exception was inapplicable because it was limited to actions seeking declaratory or injunctive relief and did not extend to actions that sought money damages, as did the plaintiff's action. Id., 312–13. In so holding, the court expressly overruled its prior decisions in *Shay* v. *Rossi*, supra, 253 Conn. 134, and *Antinerella* v. *Rioux*, 229 Conn. 479, 642 A.2d 699 (1994), to the extent that those decisions had held that sovereign immunity did not bar monetary damage actions against state officials in their official capacities if they allegedly had acted in excess of statutory authority.

[15] Federal trial courts have also recognized this same principle. See, e.g., *Longmoor* v. *Nilsen*, 285 F. Supp. 2d 132, 143 (D. Conn. 2003) (citing *Miller* for proposition that, if plaintiff sued state police officers only in their individual capacities, defendants are not protected by common-law doctrine of sovereign immunity).

[16] We construe Judge Lavine's statement as questioning only the applicability of the *Spring* test with respect to cases in which the plaintiff clearly and unambiguously has expressed an intent to sue a state official in his or her individual capacity, not, more generally, cases in which it is unclear as to the plaintiff's election regarding the capacity in which the state official has been sued.

[17] We recognize that this court, on occasion, has stated that trial courts are not required to accept as wholly determinative a plaintiff's allegation that an individual rather than the state is the real party in interest. See *Cimmino* v. *Marcoccia*, 149 Conn. App. 350, 359, 89 A.3d 384 (2014); *Kenney* v. *Weaving*, 123 Conn. App. 211, 215–16, 1 A.3d 1083 (2010). We are mindful, however, that we are bound to follow our Supreme Court's language in *Miller* requiring a court to defer to the plaintiff's election if the complaint

reasonably can be construed to bring an action against a state official in an individual capacity. See *Max's Place, LLC* v. *DJS Realty, LLC*, 123 Conn. App. 408, 415, 1 A.3d 1199 (2010) ("[a]s an intermediate appellate court, we must follow the precedent of our Supreme Court along the path which our considered reading of that precedent lays out for us" (internal quotation marks omitted)).

[18] Service of process for the fourth defendant, Cook, was made by in hand service to an individual alleged to be authorized to accept legal service for Cook. The question of whether, if challenged, this would have been deemed insufficient to bring Cook within the jurisdiction of the court in his individual capacity has been waived. See footnote 3 of this opinion. Nonetheless, it is noteworthy that the plaintiff did not seek to serve Cook through the attorney general as he would have if he wished to sue Cook only in his official capacity. See General Statutes § 52-64 (a) ("Service of civil process in any civil action . . . against any officer, servant, agent or employee of the state . . . may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford"); see also *Harnage* v. *Lightner*, 163 Conn. App. 337, 341, 137 A.3d 10 (2016) (it is "clearly established that § 52-64 (a) applies only if a state employee has been sued in his official capacity and that § 52-57 (a) applies when a state employee is sued in his individual capacity"), aff'd in part, vacated in part, 328 Conn. 248, 179 A.3d 212 (2018).

[19] Although the plaintiff argues that the court, in determining that the second criterion of the *Spring* test was met, impermissibly relied entirely on the language in the complaint alleging that the defendants were "acting under color of law"—language the plaintiff had sought to remove or amend— the plaintiff misinterprets the court's analysis. The court did state that the allegations that the defendants were acting under the color of law "sufficiently show that the individual defendants represent the state." The court further stated, however, that, "[a]lthough this is sufficient to satisfy the second criterion, *there is a separate bas[is] to do so*." (Emphasis added.) The court explained: "The additional factual allegations all concern the defendants acting in their official police functions. The plaintiff alleges that the [Groton police captain] requested the presence of the [tactical unit] and the four defendants responded to the scene as members of and a part of the [tactical unit]." (Emphasis omitted.) We, therefore, reject the plaintiff's argument that the court's analysis improperly was limited to the "color of law" allegations.

[20] This opinion should not be read as overruling sub silencio any previous Appellate Court decisions because, as a matter of policy, one panel of this court will not overrule another panel's decision in the absence of en banc consideration. See *McCullough* v. *Rocky Hill*, 198 Conn. App. 703, 712 n.13, 234 A.3d 1049, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020). We invite our Supreme Court, if provided an appropriate opportunity, to discuss more fully and definitively the proper application of the *Spring* test criteria or to reformulate the *Spring* test, something it has not yet had an opportunity to consider.

[21] In *Visual Displays, Inc.* v. *Fields*, Docket No. Civ. 3:93-837 (JAC), 1993 WL 366532 (D. Conn. August 24, 1993), a federal District Court judge, applying the *Spring* test, held that the third prong of the test was not met because the plaintiffs had expressly stated in their complaint that "all the defendants are sued in their individual capacities"; id., *4 n.26; and, because the plaintiffs "have sued the defendants solely in their individual—not their official— capacities"; id., *5; it follows that "the state is not the real party in interest . . . ." Id.

[22] We nonetheless take this opportunity to caution courts to avoid construing the fourth criterion too expansively such that almost every suit nominally brought against a state employee, even if the relief sought is limited to money damages against the individual, will be deemed to "operate to control the activities of the state or subject it to liability." *Spring* v. *Constantino*, supra, 168 Conn. 568.

In considering the state's possible liability under the fourth criterion, courts routinely have looked to General Statutes § 5-141d (a) to determine whether the state is obligated to indemnify state officials or employees if judgment were rendered against them in favor of the plaintiff. "Section 5-141d . . . evinces the legislature's intent that the state indemnify and defend

any officer or employee sued for negligent conduct occurring in the course of his or her employment." *Hunte* v. *Blumenthal*, supra, 238 Conn. 151. If, however, a plaintiff alleges wanton, reckless, or malicious conduct by the state official or employee, the attorney general has discretion whether to defend that person and the state will not legally be required to indemnify him or her if those allegations are proven, meaning that any monetary relief sought by the plaintiff would not necessarily subject the state to liability. See, e.g., *David* v. *Bureau*, Docket No. CV-07-5001460-S, 2008 WL 4249406, *3 (Conn. Super. August 25, 2008); *Flanagan* v. *Blumenthal*, Docket No. 00-7307, 2000 WL 1508874, *1 (2d Cir. October 12, 2000) (§ 5-141d grants attorney general broad discretion to deny representation "if providing it would be 'inappropriate' "). Moreover, the fourth criterion of the *Spring* test, which is stated in the disjunctive, looks not only to whether a judgment against the defendant would "subject [the state] to liability" but also to whether a judgment would "operate to control the activities of the state . . . ." *Spring* v. *Constantino*, supra, 168 Conn. 568. This latter portion of the fourth criterion, if applied with too broad a brush, has the potential, like the third criterion, to render it established in almost every case. See, e.g., *Cimmino* v. *Marcoccia*, supra, 149 Conn. App. 360 (holding that "[a]ny [monetary] judgment against the defendants would impact the manner in which state officials conduct investigations" initiated by state child advocate and attorney general). We nevertheless leave a more detailed discussion of the fourth criterion for another day. See footnote 20 of this opinion.

[23] The state argues that, even if we determine that the court improperly granted the motion to dismiss on sovereign immunity grounds, we may affirm the trial court's decision to dismiss the action on the alternative theory, raised in the motion to dismiss but not decided by the trial court, that the action is barred by statutory immunity because the plaintiff failed to allege sufficient facts to demonstrate that the defendants' actions were "wanton, reckless or malicious." For the following reasons, we decline to exercise our discretion to consider the alternative ground advanced by the state.

Practice Book § 63-4 (a) (1) (A) provides in relevant part that, "[i]f any appellee wishes to . . . present for review alternative grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues." Certainly, "[t]his court is not *precluded* . . . from reviewing an [alternative] ground that was not raised in accordance with [our rules of practice] so long as the appellant will not be prejudiced by consideration of that ground for affirmance." (Emphasis added; internal quotation marks omitted.) *State* v. *Martin M.*, 143 Conn. App. 140, 151, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013). Nonetheless, we also may decline to do so under certain circumstances. See, e.g., *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 563 n.7, 898 A.2d 178 (2006). In the present case, the defendants never filed a preliminary statement of issues raising statutory immunity as a potential alternative ground for affirmance. The defendants also failed to identify or brief statutory immunity as an alternative ground for affirmance in their appellees' brief, which would have alerted the plaintiff to that issue and provided him with an opportunity to address the defendants' arguments in a reply brief. The defendants raised the issue of statutory immunity as an alternative ground for affirmance for the first time during oral argument following the granting of reargument. Although the plaintiff—*and not the defendants*—addressed statutory immunity in the simultaneous supplemental briefs ordered by this court on reargument, he had no real notice or opportunity to respond to the arguments raised by the defendants, which were advanced for the first time at oral argument. Under these unique circumstances, and given that the trial court never had an opportunity to rule on the issue of statutory immunity, we decline to do so for the first time on appeal.

[24] Because we reverse the court's decision granting the motion to dismiss, we need not address the plaintiff's additional claim that, in granting the motion to dismiss, the court considered facts outside the complaint, namely, the Connecticut State Police Administration and Operations Manual.