******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# KARL PAUL VOSSBRINCK *v.* BRIAN HOBART
## (AC 42648)

Elgo, Alexander and DiPentima, Js.

*Syllabus*

The plaintiff, whose real property had been foreclosed on, brought an action against the defendant, a state marshal, alleging that the defendant stole, or allowed to be stolen, numerous items of the plaintiff's personal property when the defendant executed an order of ejectment at the property subsequent to the foreclosure. The plaintiff claimed that the defendant deprived him of certain of his constitutional rights and committed numerous violations of state law, including civil conspiracy and larceny. The defendant thereafter filed a motion for summary judgment, claiming that the trial court lacked subject matter jurisdiction and that he was entitled to judgment as a matter of law because no genuine issue of material fact existed. The trial court granted the defendant's motion, concluding, inter alia, that the defendant was entitled to sovereign immunity, which deprived the court of subject matter jurisdiction, and that the defendant was entitled to statutory immunity (§ 6-38a (b)) because there was no evidence of wanton, reckless or malicious conduct on his part. The court thereafter rendered judgment for the defendant, and the plaintiff appealed to this court. *Held*:

1. The trial court improperly concluded that the defendant was entitled to sovereign immunity, as state marshals are not state officials or public officials, and, thus, the doctrine of sovereign immunity is not available as a defense to an action against them for tortious conduct: the defendant's status as a state marshal is circumscribed by statute, as the legislature, following the abolition of the system of sheriffs by constitutional amendment and the passage of No. 99 of the 2000 Public Acts (P.A. 00-99), specifically designated state marshals as independent contractors who are compensated on a fee for service basis by agreement with an attorney, court or public agency, and who may not be a state marshal and a state employee at the same time, irrespective of the nature of the party that secures their services; accordingly, in effectuating an order of ejectment on behalf of the attorney representing the foreclosing party, which, at its core, involved a dispute between private parties, the defendant was not performing a sovereign function, and the mere fact that his conduct involved the effectuation of a court order did not change the essential character of the service performed; moreover, the legislature's intention that statutory immunity replace sovereign immunity, which sheriffs who became state marshals would no longer enjoy, was reflected in the incorporation of § 6-38a (b) in P.A. 00-99, as § 6-38a (b) provides state marshals with limited immunity for certain tortious acts in the performance of their execution and service of process functions, and the legislature provided for indemnification pursuant to statute (§ 6-30a (b)) in the limited circumstances under which a state marshal performs a function that retains a sovereign quality and has been sued in his or her individual capacity.

2. The trial court properly determined that the defendant was entitled to immunity pursuant to § 6-38a (b); nothing in the record raised a genuine issue of material fact as to whether his actions were wanton, reckless or malicious, the plaintiff's reference to the defendant's helpers using their own pickup trucks to remove his belongings from the property in no way supported his claim that the defendant acted improperly, and no evidence substantiated the plaintiff's claim that the conduct of the defendant and his helpers amounted to theft.

3. The plaintiff's assertion that the trial court improperly failed to address a federal statutory (42 U.S.C. § 1983) claim he raised was unavailing and this court declined to address it, as no such claim was alleged in his complaint and, thus, it was not properly before the trial court.

Argued October 14, 2020—officially released September 14, 2021

*Procedural History*

Action to recover damages for, inter alia, the defendant's alleged violation of certain of the plaintiff's constitutional rights, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Roraback, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Karl Paul Vossbrinck*, self-represented, the appellant (plaintiff).

*Nathan C. Favreau*, with whom, on the brief, was *Joseph B. Burns*, for the appellee (defendant).

*Opinion*

ELGO, J. The self-represented plaintiff, Karl Paul Vossbrinck, appeals from the summary judgment rendered by the trial court in favor of the defendant, Brian Hobart. On appeal, the plaintiff claims that the court improperly (1) concluded that the defendant, as a state marshal, was entitled to sovereign immunity, (2) concluded that the defendant was entitled to statutory immunity pursuant to General Statutes § 6-38a (b),[1] and (3) failed to address his 42 U.S.C. § 1983 claim. We agree with the plaintiff that the defendant was not entitled to sovereign immunity. We nevertheless conclude that the court properly determined that no genuine issue of material fact exists as to whether the defendant is entitled to statutory immunity under § 6-38a (b). Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history were set forth by the trial court in its memorandum of decision or otherwise are undisputed. The plaintiff owned a twenty-four acre parcel of real property located at 487 Berkshire Road in Southbury (property). The property was the subject of a foreclosure proceeding,[2] and a judgment of strict foreclosure was rendered on June 21, 2011.[3] The law day ultimately passed, and title vested in Accredited Home Lenders, Inc. In his subsequent deposition testimony in this action, the plaintiff admitted that he was a party to the foreclosure action and had received copies of court orders from that action.

At all relevant times, the defendant was a state marshal. On September 10, 2012, the defendant served an order of ejectment on "the person(s) in possession" of the property, as well as "the chief executive officer of the town where the premises are situated." On October 2, 2012, the defendant arrived at the property with movers and removed certain items of personal property and possessions from the main house. Thereafter, Safeguard Properties, LLC, the foreclosing party's property management company, arrived to clear the yard and to haul away additional items of personal property. According to the plaintiff, certain items of his personal property that had been removed were of significant value and were unaccounted for. A considerable amount of the plaintiff's property remained on the premises after the ejectment process had concluded, which the plaintiff also alleged to be of great value. The remaining personal property was not removed from the premises until 2014, when it was liquidated by the foreclosing party's attorney. There allegedly has been no accounting for the disposition of that personal property.

The plaintiff commenced the present action in 2015. The plaintiff filed the operative complaint on May 6, 2016, in which he alleged, generally, that the defendant stole, or allowed to be stolen, numerous items of his personal property during the course of the ejectment.

Thus, as the plaintiff further alleged, the defendant deprived him of his rights under 18 U.S.C. § 242, committed a civil conspiracy in violation of General Statutes § 53a-48, lacked standing to remove his property from his residence, lacked the authority to remove him from his home, committed larceny, was guilty of "unjust enrichment and quantum meruit," violated General Statutes §§ 15-140c, 49-22, 50-10 and 54-33g, and violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Additionally, the plaintiff alleged that he was entitled to replevin pursuant to General Statutes § 52-515, and damages pursuant to General Statutes §§ 52-529, 52-530 and 53a-121.

On June 5, 2018, the defendant filed what he termed a "motion to dismiss and/or for summary judgment." In that motion, the defendant asked the court to either dismiss or render summary judgment in his favor on all eighteen counts of the plaintiff's complaint, claiming both a lack of subject matter jurisdiction and that no genuine issue of material fact existed, which entitled him to judgment as a matter of law. In support thereof, the defendant relied on the plaintiff's deposition testimony, an affidavit from the defendant, and certain court filings from the underlying foreclosure action.

As the court noted in its memorandum of decision on the defendant's motion, "the plaintiff had not filed any competent admissible evidence in opposition to this motion that would either support his claims or rebut the claims of the defendant" at the time the motion initially was heard on September 4, 2018. The court, sua sponte, gave the plaintiff until September 24, 2018, to furnish any additional evidence that he wanted the court to consider when ruling on the defendant's motion. In response, the plaintiff submitted three affidavits—two from his sons and a third from Alan Gordon, a friend of the plaintiff. Read together, the affidavits allege that, "after the defendant had completed the ejectment process, a considerable amount of the plaintiff's personal property had been removed from [the property] and that substantial amounts of [the plaintiff's] personal property still remained in the yard at that address, much of which was strewn about the property in disarray."

In his affidavit submitted in support of his motion, the defendant averred that he removed only personal property from the plaintiff's main house, and that Safeguard Properties, LLC, was responsible for clearing the yard and hauling away additional items located there. The defendant further alleged that, after his work in connection with the 2012 ejectment was complete, he returned to the property on only one occasion to serve eviction papers on a tenant who was living at that address. Additionally, the defendant noted that the plaintiff, in his deposition testimony, had acknowledged that the defendant was acting pursuant to a Superior

Court order and that the defendant did not participate in the 2014 disposal of his personal property.

In its memorandum of decision granting the defendant's motion for summary judgment, the court held that the plaintiff's affidavits lacked sufficient information to create a genuine issue of fact with respect to any of the claims in his complaint. The court also explained that, in the alternative, "[e]ven if sufficient evidence had been adduced to defeat a motion for summary judgment on any of these claims, the court would nevertheless be compelled to dismiss this action for lack of subject matter jurisdiction on the basis of sovereign immunity." Citing § 6-38a (b), the court also concluded that the defendant was entitled to statutory immunity, stating that, "even if the defendant's alleged omission of failing to properly effectuate the transfer of the entirety of the plaintiff's substantial property to storage was negligent, there has been no evidence to show that any such failure was wanton, reckless or malicious." In a footnote, the court concluded that sovereign immunity would "also" bar the plaintiff's claims under the test established in *Spring* v. *Constantino*, 168 Conn. 563, 568, 362 A.2d 871 (1975), stating: "Subjecting the allegations in the complaint and the facts adduced in connection with this motion to that [*Spring*] analysis, this court concludes that the doctrine of sovereign immunity deprives the court of subject matter jurisdiction to adjudicate the plaintiff's claims."

The court further noted that, even if sovereign immunity did not operate as a bar to the plaintiff's claims, it still would have granted the defendant's motion in its entirety. The court addressed each of the claims in the plaintiff's complaint, explaining that many of the statutes on which the plaintiff relied did not provide a private cause of action and that the plaintiff did not furnish any admissible evidence to support the other claims. The court made no mention of 42 U.S.C. § 1983 in its decision and the plaintiff sought no articulation in that regard. This appeal followed.

I

The plaintiff claims that the court improperly concluded, as a matter of law, that sovereign immunity barred his action against the defendant. The defendant argues that he is a state official and, therefore, is entitled to invoke sovereign immunity. We agree with the plaintiff.

"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in

the record." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003).

"[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . While the principle of sovereign immunity is deeply rooted in our common law, it has, nevertheless, been modified and adapted to the American concept of constitutional government where the source of governmental power and authority is not vested by divine right in a ruler but rests in the people themselves who have adopted constitutions creating governments with defined and limited powers and courts to interpret these basic laws." (Citations omitted; internal quotation marks omitted.) Id. "Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property." (Internal quotation marks omitted.) Id., 314.

Our analysis of whether sovereign immunity was properly invoked in the present action begins with the precedent of our Supreme Court in *Spring* v. *Constantino*, supra, 168 Conn. 563. In that seminal case, the court explained that Connecticut courts should consider "the following criteria for determining whether the suit is, in effect, one against the state and cannot be maintained without its consent: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability."[4] (Internal quotation marks omitted.) Id., 568. In addition, our Supreme Court set forth three factors regarding the "essential characteristics" of a "public office," which are whether the individual possesses "(1) an authority conferred by law, (2) a fixed tenure of office, and (3) the power to exercise some portion of the sovereign functions of government." (Internal quotation marks omitted.) Id. The court further emphasized that "[a] key element of this test is that the 'officer' is carrying out a sovereign function." Id., 569.

Whether state marshals are entitled to the protection of sovereign immunity is a question of first impression for the appellate courts of this state. Our analysis begins with § 6-38a (a), which provides in relevant part: "For the purposes of the general statutes, 'state marshal'

means a qualified deputy sheriff incumbent on June 30, 2000, under section 6-38 or appointed pursuant to section 6-38b who shall have authority to provide legal execution and service of process in the counties in this state pursuant to section 6-38 *as an independent contractor compensated on a fee for service basis, determined . . . by agreement with an attorney,* court or public agency requiring execution or service of process." (Emphasis added.) By its plain language, that statutory imperative indicates that state marshals are not only independent contractors but also that their services may be secured by attorneys representing private entities, in addition to courts or public agencies.[5]

Notably, the court in *Spring* v. *Constantino*, supra, 168 Conn. 563, did not actually apply the three factor test it articulated in determining whether the public defenders in question were public officials. Instead, the court emphasized that "[a] key element of [the] test is that the 'officer' is carrying out a sovereign function" and reasoned that, "[e]ven though the state must ensure that indigents are represented by competent counsel, it can hardly be argued that the actual conduct of the defense of an individual is a sovereign or governmental act. . . . The public defender when he represents his client is not performing a sovereign function and is therefore not a public or state official to whom the doctrine of sovereign immunity applies." Id., 569.[6]

Here, the record unequivocally indicates that the defendant was effectuating an order of ejectment on behalf of the attorney representing the foreclosing party.[7] Because that action, at its core, involved a dispute between private parties, the defendant was not performing a sovereign function. The mere fact that his conduct involved the effectuation of a court order does not change the essential character of the service performed, which involved a judicial remedy sought by private parties who secured his services. Moreover, we are not persuaded that the defendant's services would assume the character of a sovereign function even if public entities, like the Superior Court or a public agency, retained them. Irrespective of the nature of the party that secured a state marshal's services, our legislature plainly has indicated that state marshals are independent contractors and similarly reiterated under General Statutes § 6-38b (h) that "no person may be a state marshal and a state employee at the same time."

Despite those unambiguous legislative pronouncements, the defendant nonetheless attempts to assume the cloak of the sovereign and its functions by arguing that marshals are selected and regulated by the State Marshal Commission pursuant to General Statutes § 6-38f; that they may, under certain conditions, exercise the power to arrest without a warrant pursuant to General Statutes § 54-1f; that they may use force incident to an arrest pursuant to General Statutes § 53a-22 (b);

and contends that "state marshals *are* the state when engaged in the performance of the executive branch's function of ejecting a person from property to which they have no right of possession." (Emphasis added.) Relying on those assertions, a plethora of Superior Court decisions,[8] and *Miller* v. *Egan*, supra, 265 Conn. 301, the defendant insists that he is a state official, notwithstanding the legislature's explicit statutory designation of state marshals as independent contractors who are not state employees. We are not persuaded.

As a preliminary matter, we note that the defendant's reliance on *Miller* v. *Egan*, supra, 265 Conn. 301, with respect to his status as a public official is misplaced. Although the parties in that case conceded that the defendants, all former sheriffs, were public officials pursuant to *Spring*,[9] sheriffs at the time were not only public officials but, more importantly, were constitutional officers. See Conn. Const., art. IV, § 25 ("[s]heriffs shall be elected in the several counties" and removed only by action of legislature); *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 793, 6 A.3d 726 (2010) ("[a] constitutional office is understood to be one expressly named in and created by [a] constitution, whereas a statutory office is one created by legislation" (internal quotation marks omitted)); *Sibley* v. *State*, 89 Conn. 682, 685, 96 A. 161 (1915) ("The rights, authority and duty thus conferred upon the sheriff by law clearly invests him with a portion of the sovereign power of the government to be exercised by him for the public good. The office of sheriff is thus a public office . . . ."). The sheriff system, however, was abolished by constitutional amendment and the passage of No. 99 of the 2000 Public Acts (P.A. 00-99) ("An Act Reforming the Sheriff System").[10] That legislation effected the transition from the sheriff system to a system of state marshals, who are selected and regulated by the State Marshal Commission, and judicial marshals, who are employed by the Judicial Branch. As such, nearly all of the responsibilities of sheriffs with respect to service of process were transferred to the state marshals, while their responsibilities with respect to courthouse security and the custody and transportation of prisoners were transferred to the judicial marshals.

Thus, in contrast to sheriffs, who indisputably were elected public officials under the Connecticut constitution, the defendant's status as a state marshal is circumscribed by statute. Following the abolition of the system of sheriffs, the legislature specifically designated state marshals as "*independent contractor*[*s*] *compensated on a fee for service basis, determined . . . by agreement with an attorney,* court or public agency requiring execution or service of process"; (emphasis added) General Statutes § 6-38a (a); who may not "be a state marshal and a state employee at the same time." General Statutes § 6-38b (h). By contrast, judicial marshals, now employed by the Judicial Branch, became state employ-

ees. See *Kim* v. *Emt*, 153 Conn. App. 563, 569 n.4, 102 A.3d 137 ("under our statutory scheme, judicial marshals are considered separate and distinct from state marshals, and are considered state employees of the Judicial Branch under General Statutes §§ 6-32d (b) and 6-32f (a)"), cert. denied, 315 Conn. 908, 105 A.3d 236 (2014).

Our Supreme Court's observations in *Sibley* v. *State*, supra, 89 Conn. 682, also inform our analysis. Concluding that sheriffs were not state employees entitled to benefits under the Workmen's Compensation Act of 1913, the court drew a clear distinction between public officers who exercise sovereign powers and state employees. "[The plaintiff] was not an employee, and . . . the [s]tate was not using his services for pay. He was performing a duty which he owed to the [s]tate, and the salary which was attached to the office was not given in payment for his services but, as is said concerning public officers . . . to enable him to perform his statutory duty as one of the public functionaries of the [s]tate exercising a portion of its sovereign powers. The [s]tate, like public municipal corporations and private firms and individuals, may be, and is a large employer of persons by contract. The [s]tate and the person or persons whom it employs to care for the lawns surrounding the capitol are as much employer and employee as are the householder and the person who is employed by him to mow his lawns; but no one would say that the [g]overnor and other public officers who exercise the sovereign powers of the [s]tate and receive, as such officers, the salary attached by law to their offices, are mere employees of the [s]tate. While exercising those powers they represent the [s]tate. *The office is a trust and not an employment; the salary attached is for the maintenance of the office and not a payment for the incumbent's services*." (Emphasis added.) Id., 687–88. The court further observed that "[t]he office of sheriff is thus a public office . . . . The incumbent of such an office holds it as a trust from the [s]tate not resting upon contract. . . . He is a preserver of the public peace; he is not the hired servant of a master; no contract relation exists between him and the community or [s]tate."[11] (Citations omitted.) Id., 685.

In light of that precedent, we conclude that the acknowledgment in *Miller* v. *Egan*, supra, 265 Conn. 301, that *sheriffs* were public officials simply has no bearing on the status of state marshals. On the contrary, the reforms instituted in 2000 that established the state marshal system, coupled with the legislature's explicit designation of state marshals as independent contractors who are compensated on a fee for service basis, illuminates the legislature's intentions as to whether service of process constitutes a sovereign act. When the constitutional amendment abolishing the sheriff system was passed, the status of sheriffs as constitutional public officers effectively ended. Thus, the services ren-

dered by state marshals, which do not include the services assumed by judicial marshals, are no longer inherently sovereign acts. Although this is most apparent when state marshals are effecting service on behalf of private litigants, it is no less true when their services are retained by a public agency. Thus, when the Office of the Attorney General, for example, institutes a suit and retains the services of a marshal for service of process, the character of the service does not change simply because a constitutional officer has secured them.

Nor are we persuaded that the sovereign immunity enjoyed by the State Marshal Commission; see *Page* v. *State Marshal Commission*, 108 Conn. App. 668, 681, 950 A.2d 529, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008); which is a public agency, should be imputed to the state marshals simply because the commission is charged with the hiring and oversight of the state marshals. The defendant has provided no authority that suggests that oversight and regulation by a state agency of persons or entities transforms the services rendered into sovereign functions.

Although it is true that state marshals have the title of peace officer and have the ability to effectuate an arrest as well as other law enforcement type authority in the course of their duties, peace officers, as defined by General Statutes § 53a-3,[12] are not limited to persons acting on behalf of the state. Because they include local and municipal officers as well as federal and tribal law enforcement officers who are not entitled to invoke state sovereign immunity, we are not persuaded that the status of peace officer provides a sufficient basis to conclude that one is a public official for purposes of sovereign immunity.

Additionally, as we discuss further in part II of this opinion, state marshals are entitled to a limited statutory immunity from liability for certain tortious acts in performance of their execution and service of process functions under § 6-38a (b), which provides: "Any state marshal, shall, in the performance of execution or service of process functions, have the right of entry on private property and no such person shall be personally liable for damage or injury, not wanton, reckless or malicious, caused by the discharge of such functions." That provision was incorporated into P.A. 00-99, reflecting the legislature's intention to replace sovereign immunity, which state marshals would no longer enjoy, with statutory immunity. That immunity is analogous to but, importantly, distinct from the immunity afforded to state officers and employees under General Statutes § 4-165, which provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment," and General Statutes § 5-141d,

which provides that "any state officer or employee" sued for damages accruing while in the performance of their duties will be indemnified by the state for any such award arising from conduct that is not wanton, reckless, or malicious. These provisions offering state employees statutory immunity and defense and indemnification are significant to our discussion for two reasons. Because they are triggered when a state employee is sued in his or her individual capacity, the legislature's decision to pass a separate but analogous provision for statutory immunity for state marshals underscores the underlying statutory scheme that (1) state marshals are not public officials or state employees, and (2) they cannot invoke sovereign immunity and, therefore, can be sued only in their individual capacity.[13]

In the limited circumstances under which a state marshal performs a function that retains a sovereign quality, such as a civil capias arrest, and that state marshal has been sued in his or her individual capacity, our legislature specifically has provided for his or her indemnification. Our legislature addressed that issue in its 2007 amendment to General Statutes § 6-30a, which now provides in relevant part in subsection (b) that "[t]he state shall protect and save harmless any state marshal from financial loss and expense . . . arising out of any claim, demand or suit instituted against the state marshal for personal injury or injury to property by . . . any person who is lawfully taken into custody by the state marshal, *pursuant to a capias issued by . . . the Superior Court* and directed to the state marshal, if such injury occurs when such person, while in such custody, is transported in a private motor vehicle operated by the state marshal. In the event a judgment is entered against the state marshal for a malicious, wanton or wilful act, the state marshal shall reimburse the state for any expenses incurred by the state in defending the state marshal and the state shall not be held liable to the state marshal for any financial loss or expense resulting from such act." (Emphasis added.) General Statutes § 6-30a (b). Therefore, when state marshals perform capias arrests, and injury to person or property occurs during such an arrest, the state will indemnify state marshals as a substitute for the sovereign immunity that they are not entitled to invoke.

In light of the foregoing, we disagree with the court's conclusion that state marshals are public officials for sovereign immunity purposes. Because state marshals are not state officials or state employees, the doctrine of sovereign immunity is not available as a defense to an action for tortious conduct against a state marshal.[14] For that reason, the court improperly concluded that the defendant was entitled to sovereign immunity.

## II

The plaintiff also claims that the court improperly concluded that the defendant was entitled to statutory

immunity pursuant to § 6-38a (b).[15] More specifically, he argues that the defendant's "actions fall into the category of wanton, reckless or malicious because he ejected the plaintiff with the help of several persons, some in their own pickup trucks, and those persons, under the watchful eye of the defendant, took many possessions of the plaintiff and kept them for themselves." For that reason, he argues that summary judgment was inappropriate. We disagree.

Our review of a trial court's decision to grant a motion for summary judgment is well settled. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citation omitted; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995).

In granting the defendant's motion for summary judgment on the basis of statutory immunity, the court stated in relevant part: "[G]iving the plaintiff . . . the benefit of any uncertainty, as required by law, the evidence would at best support only a colorable claim for negligence against the defendant. This is because even if the defendant's alleged omission of failing to properly effectuate the transfer of the entirety of the plaintiff's substantial property to storage was negligent, *there has been no evidence to show that any such failure was wanton, reckless or malicious.*" (Emphasis added.) On our careful review of the materials submitted by the parties in connection with the defendant's motion, we agree that there is nothing in the record that raises a genuine issue of material fact as to whether the defendant's actions were wanton, reckless, or malicious. The plaintiff's reference to the defendant's "helpers" using "their own pickup trucks" in no way supports his claim that the defendant acted improperly. Furthermore, the plaintiff's argument rests on his conclusion that the conduct of the defendant and his helpers amounts to theft.[16] In the absence of any evidence to substantiate that claim, we cannot conclude that the defendant's

conduct was wanton, reckless, or malicious. Accordingly, the court properly determined that the defendant is entitled to statutory immunity pursuant to § 6-38a (b).

### III

As a final matter, the plaintiff claims that the court improperly failed to address his 42 U.S.C. § 1983 claim. We disagree. No such claim was alleged in the plaintiff's complaint, and, thus, it was not properly before the trial court. See, e.g., *Miller* v. *Egan*, supra, 265 Conn. 309 (plaintiff's right to recover is limited by allegations of complaint); *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 23 n.3, 857 A.2d 354 (declining to address unpreserved claim that was "not contained in the complaint and was not raised in the trial court"), cert. denied, 272 Conn. 907, 863 A.2d 700 (2004).

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal." (Internal quotation marks omitted.) *Guzman* v. *Yeroz*, 167 Conn. App. 420, 426, 143 A.3d 661, cert. denied, 323 Conn. 923, 150 A.3d 1152 (2016). It is well established that "[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008). "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Citations omitted; internal quotation marks omitted.) *Burnham* v. *Karl & Gelb*, *P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5. Because the plaintiff failed to raise a § 1983 claim before the trial court, we decline to address that claim in this appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 6-38a (b) provides: "Any state marshal, shall, in the performance of execution or service of process functions, have the right of entry on private property and no such person shall be personally liable for damage or injury, not wanton, reckless or malicious, caused by the discharge of such functions."

[2] See *Accredited Home Lenders, Inc.* v. *Vossbrinck*, Superior Court, judicial district of Waterbury, Docket No. CV-08-5007144-S.

[3] See *Vossbrinck* v. *Eckert Seamans Cherin & Mellott, LLC*, 301 F. Supp. 3d 381, 384 (D. Conn. 2018).

[4] We are mindful of our recent decision in *Devine* v. *Fusaro*, 205 Conn. App. 554, A.3d (2021), petition for cert. filed (Conn. July 29, 2021) (No. 210124), in which this court clarified the proper purpose of the *Spring* test. As we explained, "[o]ur Supreme Court has affirmed that the [*Spring* test] is an appropriate mechanism . . . to determine the capacity in which the named defendants are sued in actions asserting violations of state law . . . . [W]e do not read the precedent of our Supreme Court to require a court to apply the *Spring* test if the complaint unequivocally states the capacity in which the defendant is sued. Indeed, closer examination of *Spring* and our Supreme Court's application of the *Spring* test . . . reveals that the test is not well suited for and was never expressly intended to apply to instances in which a plaintiff has made a clearly expressed election in the complaint to sue a state official in his or her individual capacity." (Citation omitted; internal quotation marks omitted.) Id., 568. For that rea-

son, we concluded that "a court's application of the *Spring* test is unnecessary and ill-advised in a case . . . in which the plaintiff has expressed a clear and unambiguous choice in the operative complaint to sue a state official in his or her individual capacity. In such cases, the doctrine of sovereign immunity simply is not implicated." Id., 563.

Unlike in *Devine*, the complaint in the present case does not contain "a clearly expressed election . . . to sue a state official in his or her individual capacity." Id., 568. Rather, the plaintiff alleged in relevant part that the defendant had improperly "used authority vested in him by the state of Connecticut" in his capacity as a state marshal. In response, the defendant alleged sovereign immunity as a special defense, claiming that he is a state official entitled to raise that doctrine as a shield from claims against him in his official capacity. See *Shay* v. *Rossi*, 253 Conn. 134, 162, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003). We, therefore, must apply the *Spring* test to determine, in the first instance, whether the defendant is entitled to invoke the protections embodied in the doctrine of sovereign immunity. See *Sullins* v. *Rodriguez*, 281 Conn. 128, 136, 913 A.2d 415 (2007); *Devine* v. *Fusaro*, supra, 205 Conn. App. 568.

[5] Moreover, the statutory framework outlining the fee schedule for various services provided by state marshals delineates separate provisions with respect to those distinct entities. For example, General Statutes § 52-261 (a) provides in relevant part: "Except as provided in subsection (b) of this section and section 52-261a, each officer or person who serves process, summons or attachments on behalf of . . . (1) [a]n official of the state or any of its agencies, boards or commissions, or any municipal official acting in his or her official capacity, shall receive a fee of not more than thirty dollars for each process served . . . ."

Similarly, pursuant to General Statutes § 52-261a (a), "[a]ny process served by any officer or person for the Judicial Department or Division of Criminal Justice shall be served in accordance with the following schedule of fees . . . ."

In contrast, § 52-261 (a) provides in relevant part that each officer or person who serves process, summons or attachments on behalf of (2) "*any person, except a person described in subdivision (1) of this subsection,* shall receive a fee of not more than forty dollars for each process served and an additional fee of forty dollars for the second and each subsequent service of such process . . . ." (Emphasis added.)

As the previously discussed statutory provisions demonstrate, state marshals, as independent contractors, provide services for fees at varying rates set by statute relative to these distinct classifications, including private persons and entities.

[6] In *Gross* v. *Rell*, 304 Conn. 234, 248 n.7, 40 A.3d 240 (2012), the court noted that, in 1976, "the legislature, through the enactment of Public Acts 1976, No. 76-371, §§ 1 and 2, added public defenders to the definition of 'state officers and employees' entitled to qualified statutory sovereign immunity pursuant to General Statutes § 4-165." As such, the court recognized that the holding in *Spring* v. *Constantino*, supra, 168 Conn. 576, that public defenders are not entitled to absolute quasi-judicial immunity, which was another theory advanced by the defendant, was superseded by statute.

[7] The "Application and Execution for Ejectment Mortgage Foreclosure" was made by Attorney Geraldine A. Cheverko on behalf of the foreclosing party and the entity entitled to possession, Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Loan Trust 2005-4.

[8] See *Brenner, Saltzman & Wallman, LLP* v. *Tony's Long Wharf Transportation, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-09-5032765 (November 26, 2012) (55 Conn. L. Rptr. 68); *McAllister* v. *Valentino*, Superior Court, judicial district of Fairfield, Docket No. CV-11-5029414-S (April 10, 2012) (53 Conn. L. Rptr. 796); *Mason* v. *Barbieri*, Superior Court, judicial district of Waterbury, Docket No. CV-08-5011263-S (April 14, 2010); *International Motorcars, LLC* v. *Sullivan*, Superior Court, judicial district of New Britain, Docket No. CV-05-4005168 (June 20, 2006) (41 Conn. L. Rptr. 559).

[9] Notably, at issue in *Miller* was whether the sheriffs were being sued in their official or individual capacity, the latter of which would not bar suit on the basis of sovereign immunity. Because the court held that, pursuant to *Spring*, the plaintiff asserted his claims against the individual defendants in their official capacities, and no exception to or waiver of sovereign immunity applied, those claims were barred by the doctrine of sovereign

of immunity. *Miller* v. *Egan*, supra, 265 Conn. 301; see also *Devine* v. *Fusaro*, supra, 205 Conn. App. 554.

[10] Article thirty, § 1, of the constitution of Connecticut, adopted November 29, 2000, repealed § 25 of article fourth of the constitution of Connecticut.

[11] See also *Rogers* v. *County Commissioners*, 18 Conn. Supp. 401, 403 (1953) ("A sheriff of a county is a public officer. . . . He holds his office, not as an 'employee' under contractual relation, but as a public official under trust from the state, which has invested him with a portion of its sovereign power to be exercised in the interest of the public. . . . A deputy sheriff holds an appointment as distinguished from an employment, and is a public officer. . . . Deputies have the same powers as has their county sheriff." (Citations omitted.)).

[12] General Statutes § 53a-3 (9) defines " 'Peace officer' " as "a member of the Division of State Police within the Department of Emergency Services and Public Protection or an organized local police department, a chief inspector or inspector in the Division of Criminal Justice, a state marshal while exercising authority granted under any provision of the general statutes, a judicial marshal in the performance of the duties of a judicial marshal, a conservation officer or special conservation officer, as defined in section 26-5, a constable who performs criminal law enforcement duties, a special policeman appointed under section 29-18, 29-18a or 29-19, an adult probation officer, an official of the Department of Correction authorized by the Commissioner of Correction to make arrests in a correctional institution or facility, any investigator in the investigations unit of the office of the State Treasurer, an inspector of motor vehicles in the Department of Motor Vehicles, who is certified under the provisions of sections 7-294a to 7-294e, inclusive, a United States marshal or deputy marshal, any special agent of the federal government authorized to enforce the provisions of Title 21 of the United States Code, or a member of a law enforcement unit of the Mashantucket Pequot Tribe or the Mohegan Tribe of Indians of Connecticut created and governed by a memorandum of agreement under section 47-65c who is certified as a police officer by the Police Officer Standards and Training Council pursuant to sections 7-294a to 7-294e, inclusive . . . ."

[13] We note that, following the passage of P.A. 00-99, § 6-38a (b) buttressed other preexisting provisions of the statutory scheme that ensured that members of the public had a remedy when state marshals were individually sued for tortious conduct.

General Statutes § 6-30a (a) provides in relevant part: "On and after December 1, 2000, each state marshal shall carry personal liability insurance for damages caused by reason of such marshal's tortious acts in not less than the following amounts: (1) For damages caused to any one person or to the property of any one person, one hundred thousand dollars; and (2) for damages caused to more than one person or to the property of more than one person, three hundred thousand dollars. . . ."

That provision first was enacted in 1976 with respect to the former sheriffs and was amended by P.A. 00-99 with no changes, save the replacement of all references to sheriff with state marshal.

By its plain language, § 6-30a recognizes that a state marshal may cause damage in the performance of his or her duties, and it ensures that insurance coverage is available to protect any party injured by virtue of a state marshal's tortious conduct. In considering whether that provision should operate as a waiver of the state's sovereign immunity, the court in *Miller* v. *Egan*, supra, 265 Conn. 301, explained: "We fail to see how a requirement that sheriffs and deputy sheriffs purchase *personal liability* insurance necessarily implies that the legislature intended to waive the state's sovereign immunity, either from suit or liability, under § 6-30a. In fact, the opposite inference makes more sense, namely, that the legislature intended the individual sheriffs and deputy sheriffs, rather than the state, to bear liability for the conduct covered by the statute. This conclusion is bolstered by the statute's definition of 'tortious acts' as 'negligent acts, errors or omissions *for which such sheriff or deputy sheriff may become legally obligated* . . . .' General Statutes (Rev. to 1999) § 6-30a." (Emphasis altered.) Id., 329–30.

The court in *Miller* also reviewed the legislative history of § 6-30a. During the floor discussion of Public Acts 1976, No. 76-15, which eventually became § 6-30a, Representative Richard D. Tulisano, a member of the Judiciary Committee, which had sponsored the legislation, explained the purpose of the act: "We want to make sure that the public is protected from any acts which the sheriff may incur in the event that he does not have personal assets of his own to cover either misservice of process, assault or battery or any other [of] those items listed in the statute." 19 H.R. Proc., Pt. 2, 1976

Sess., p. 494. When Representative Gerald F. Stevens asked whether it was "the intention of this legislation that no state funds be expended for the purchase of such insurance or for reimbursement of sheriffs," Representative Tulisano replied: "[I]t is absolutely the intention of this bill to have it be a personal liability of the sheriff *and not the state*." (Emphasis added.) Id., p. 495; see also *Miller* v. *Egan*, supra, 265 Conn. 301, 329–30 (discussing legislative history). The General Assembly's reenactment of § 6-30a in 2000, which replaced only references to "sheriffs" with "marshals," further demonstrates that the General Assembly intended state marshals to be personally liable for damages caused by their tortious conduct and instituted an insurance requirement for the protection of the public.

Moreover, General Statutes § 6-39 provides in relevant part that, "[e]ach state marshal, before entering upon the duties of a state marshal, shall give to the State Marshal Commission a bond in the sum of ten thousand dollars conditioned that such state marshal will faithfully discharge the duties of state marshal and answer all damages which any person sustains by reason of such state marshal's unfaithfulness or neglect. . . ."

The requirement that state marshals post a bond before entering upon their duties is independent from the insurance requirement, and it reinforces our conclusion that state marshals are not public officials, and, therefore, they may be sued only in their individual capacities.

[14] We are mindful that this conclusion is at odds with a line of Superior Court cases, including *Brenner, Saltzman & Wallman, LLP* v. *Tony's Long Wharf Transportation, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-09-5032765 (November 26, 2012) (55 Conn. L. Rptr. 68), *McAllister* v. *Valentino*, Superior Court, judicial district of Fairfield, Docket No. CV-11-5029414-S (April 10, 2012) (53 Conn. L. Rptr. 796), *Mason* v. *Barbieri*, Superior Court, judicial district of Waterbury, Docket No. CV-08-5011263-S (April 14, 2010), and *International Motorcars, LLC* v. *Sullivan*, Superior Court, judicial district of New Britain, Docket No. CV-05-4005168 (June 20, 2006) (41 Conn. L. Rptr. 559). See footnote 8 of this opinion. To the extent that those cases concluded that state marshals are state employees or officials for purposes of a sovereign immunity analysis, we disavow those holdings.

[15] See footnote 1 of this opinion.

[16] In his appellate brief, the plaintiff states that "[t]he real issue before this court is to decide if the theft of more than $100,000 worth of the plaintiff's belongings constitute[s] wanton, reckless or malicious behavior."